PETER C. LOEWENBERG ET AL. *v.* TIGER LEE
CONSTRUCTION COMPANY
(2370)

TESTO, HULL and BORDEN, Js.

Argued November 9, 1983—decision released February 28, 1984

*Arthur A. Palmunen,* with whom, on the brief, was
*Valdis Vinkels,* for the appellant (defendant).

*John F. Nagle,* for the appellees (plaintiffs).

TESTO, J. The plaintiff landowners commenced this
action to recover damages from the defendants for
dumping debris onto the plaintiffs' land from an abut-
ting lot, for the destruction of trees and for causing

an increased water flow onto the plaintiffs' property. The trial court rendered judgment for the plaintiffs on the first count of the complaint in the amount of $5480. From this judgment the defendant has appealed.[1]

The defendant claims that the lower court erred (1) in awarding treble damages for the uprooted trees; (2) in admitting the testimony of the plaintiffs' expert witness relative to the value of certain trees; (3) in concluding that the damages could reasonably be established at $1500; (4) in concluding that the defendant made unauthorized deposits of debris into the plaintiffs' pond; and (5) in awarding $600 damages for the replacement of certain cranberry bushes.

The plaintiffs are the owners of a thirty-five acre parcel of undeveloped woodland containing a pond with cranberry plants growing around it. The property is located in the town of Andover. In 1977, the defendant was the owner of land abutting the rear portion of the plaintiffs' parcel. In September of 1977, the defendant began clearing and excavating one of its parcels designated as the Jones lot. The lot had on it bushes, small trees and other forms of brush growth which had to be cleared prior to the construction of a dwelling house on it. A bulldozer was used to clear the lot which abuts the plaintiffs' parcel at the point where there is a pond.

On the other side of the Jones lot is a lot owned by the Gardners. The Gardners had permission to go onto the plaintiffs' land to cut trees for firewood. Subsequent to the completion of the Jones house, Ray Gardner observed two separate mounds of debris consisting of dirt, rocks, stumps, and brush in the area of the pond. The plaintiffs saw these piles for the first time when their attention was called to them by the Gardners.

---

[1] This appeal, originally filed in the Supreme Court, was transferred to this court. Public Acts, Spec. Sess., June, 1983, No. 83-29, § 2 (c).

These piles in the pond area are located where the cranberry bushes are concentrated but none grow anymore where the piles cover the land.

The defendant also cut a trench into the plaintiffs' land at a point where the defendant's parcel, designated as the Austin lot, and the plaintiffs' acreage abut. This cut, referred to as a swail, was used to alleviate a water problem on the Austin lot where a house had been constructed during 1979. The area of the cut was totally devoid of any trees or other growth. On each side of the trench, however, the plaintiffs' land is heavily wooded with maple, hickory and oak trees.

From the facts found, the trial court concluded that the defendant went onto the plaintiffs' land without license to do so, that this was a knowing and intentional trespass and that during the trespass the defendant uprooted trees, dug a trench on the plaintiffs' property where it abuts the Austin lot, and deposited dirt, rock and debris in the area of the pond abutting the Jones lot. The court further concluded that since the removal of the trees on the swail was not the result of any mistaken belief that the defendant was on the Austin property, the plaintiffs were entitled to three times the value of the fifteen trees removed. Judgment was rendered for the plaintiffs in the amount of $5480 covering the following: three times the value of the fifteen trees worth $100 each or $4500; $600 to replace 1200 square feet of cranberry bushes; and $380 to remove the piles of debris.

I

The first claim pursued by the defendant on appeal is that the trial court erred in awarding treble damages under § 52-560 of the General Statutes[2] in that

[2] General Statutes § 52-560 reads in relevant part: "Any person who cuts, destroys or carries away any trees, timber or shrubbery, standing or lying on the land of another . . . without license of the owner, and any person

the plaintiffs' complaint did not specifically claim these damages in its prayer for relief or otherwise advise the defendant of the plaintiffs' intention to claim such relief.

The plaintiffs' pleadings contain a claim for "just and reasonable money damages" and do not include a specific claim for treble damages under § 52-560. The trial court's conclusion to triple the amount of damages awarded for the fifteen trees worth $100 each was incorrect.

The Supreme Court in *Alaimo* v. *Royer,* 188 Conn. 36, 448 A.2d 207 (1982), recently decided a similar question. At issue was whether treble damages under § 52-564 of the General Statutes could be awarded where the complaint had not expressly invoked the specific statute. Section 52-564 permits the recovery of treble damages for the theft of property. In holding that the damages could not be awarded, the court stated, "our earlier cases considering similar statutes have consistently required that a *plaintiff's claim for relief 'be specifically based upon the statutory remedy'* as well as factually within its boundaries." (Emphasis added.) *Alaimo* v. *Royer,* supra, 43, quoting *Tillinghast* v. *Leppert,* 93 Conn. 247, 249-50, 105 A. 615 (1919); see *Dunbar* v. *Jones,* 87 Conn. 253, 256-57, 87 A. 787 (1913). When a plaintiff relies on a statute which permits the statutory recovery of multiple damages, it is necessary that the claim for relief should advise the defendant of an intention to claim such a remedy. *Tillinghast* v. *Leppert,* supra; *Dunbar* v. *Jones,* supra, 257.

There does not appear to be any logical reason not to extend the reasoning of *Alaimo* to include General

who aids therein, shall pay to the party injured . . . *three times the reasonable value of any . . . tree, timber or shrubbery . . . .*" (Emphasis added.)

Statutes § 52-560 and to require that in order to recover treble damages under the statute, the complaint must clearly state that the claim for relief is based upon the statutory remedy. We find that the trial court erred in trebling the amount of damages awarded for the fifteen trees removed.

## II

The defendant next challenges the trial court's ruling admitting the testimony of Guillemette, the plaintiffs' expert witness, regarding the value of the trees uprooted from the trench. Whether a witness is qualified to testify as an expert with respect to a certain matter is a decision to be made by the trial court. *McKiernan* v. *Caldor, Inc.,* 183 Conn. 164, 167–68, 438 A.2d 865 (1981). That decision will not be disturbed on appeal unless there has been an abuse of discretion or there was a clear error involving a misconception of the law. Id., 168; *State* v. *Cosgrove,* 181 Conn. 562, 588, 436 A.2d 33 (1980); *Siladi* v. *McNamara,* 164 Conn. 510, 513, 325 A.2d 277 (1973). The trial court determined that the plaintiffs' witness had reasonable qualifications to testify as an expert on the questions presented. The defendant's objection, therefore, goes to the weight rather than to the admissibility of the testimony. *McKiernan* v. *Caldor, Inc.,* supra; *State* v. *Wallace,* 181 Conn. 237, 241, 435 A.2d 20 (1980); *Oborski* v. *New Haven Gas Co.,* 151 Conn. 274, 280, 197 A.2d 73 (1964). In weighing the testimony, the trier of fact may accept part of the testimony without being bound by the total opinion of an expert. *Johnson* v. *Healy,* 183 Conn. 514, 517, 440 A.2d 765 (1981); *Smith* v. *Smith,* 183 Conn. 121, 123, 438 A.2d 842 (1981).

Guillemette testified that his observations coupled with a measurement as to length revealed that the cut on the plaintiffs' land behind the Austin lot was sixty-six feet in length, eight to ten feet in width, and from

zero to five feet in depth. He described the plaintiffs' land as heavily wooded with trees consisting basically of maples, hickorys and oaks on both sides of the cut. He further testified that approximately 60 percent of these trees were maple trees and the remaining trees were oak and hickory in equal amounts. From his observations, he estimated that twelve to fifteen trees had been uprooted. On the basis of a chart to appraise the value of the severed trees, he determined that their value was in the range of $30 to $150 each.

The court concluded that fifteen trees had been uprooted worth $100 each. The defendant claims that the court erred by relying on Guillemette's testimony which was imprecise as to the type, size, value and number of each tree that was destroyed. "Damages are an essential element of the plaintiff[s'] proof before [they are] entitled to recover. . . . They must be proved with reasonable certainty." *Falco* v. *James Peter Associates, Inc.,* 165 Conn. 442, 445, 335 A.2d 301 (1973), quoting *Braithwaite* v. *Lee,* 125 Conn. 10, 14, 2 A.2d 380 (1938). Mathematical exactness in the proof is often impossible, but the plaintiffs' must nevertheless provide sufficient evidence for the trier to make a fair and reasonable estimate. *Falco* v. *James Peter Associates, Inc.,* supra. We find no abuse of discretion in the trial court's ruling on the value of the trees based on the testimony by the plaintiffs' expert witness.

### III

The third issue raised by the defendant concerns the trial court's finding that the defendant was responsible for the debris in the pond area. The defendant maintains that the plaintiffs' witnesses did not present any direct evidence to support the court's finding. There was, however, sufficient circumstantial evidence[3] pre-

---

[3] The defendant completed construction of the house on the Jones lot in December, 1977. After its completion, Ray Gardner observed for the first

sented. Circumstantial evidence is defined as adequate proof of a fact if the inference to be drawn from the circumstantial evidence, in the light of other relevant evidence, is strong enough so that the trier may reasonably find that it is more probable than not that the fact referred to is true. *State* v. *Perez,* 183 Conn. 225, 229, 439 A.2d 305 (1981); *Gaul* v. *Noiva,* 155 Conn. 218, 224, 230 A.2d 591 (1967). "It is the function of the trial court to determine the relative credit to be given to the testimony of witnesses and to deduce reasonable inferences from the evidence." *State* v. *Staples,* 175 Conn. 398, 407, 399 A.2d 1269 (1978), quoting *State* v. *White,* 169 Conn. 223, 242, 363 A.2d 143 (1975). We find that the trial court did not err in concluding as it did conclude.

## IV

The defendant's final claim challenges the award of $600 for the replacement of the cranberry bushes. The defendant argues that the destruction of the cranberry plants constitutes special damages which cannot be recovered unless alleged in the complaint, and alternatively, even if the admission of evidence of damages to the plants was not error, the amount awarded was excessive. We do not agree.

The damages to the cranberry bushes are not special damages. They were a foreseeable result of placing two mounds of debris on top of them. Furthermore, the award was not excessive. The plaintiffs' expert witness testified that the area to be replaced covered 1200 square feet. While there was some conflicting testimony concerning the area to be replaced, the trier chose to believe as more credible the testimony of the expert. See *Kalleher* v. *Orr,* 183 Conn. 125, 128, 438 A.2d 843 (1981). We cannot retry the case.

time two separate mounds of debris in the pond area. The plaintiffs had not seen these piles in that area during their trips there in the summer of 1977.

There is error in part, the judgment is set aside and the case is remanded with direction to render judgment for the plaintiffs to recover $2480.

In this opinion the other judges concurred.