## D.F.P. Enterprises *v.* City of Waterbury
### (2615)

Dupont, C. J., Hull and Spallone, Js.

Argued May 8—decision released September 24, 1985

*Joseph H. Pellegrino,* for the appellant (plaintiff).

*Antony A. Casagrande,* assistant corporation counsel, with whom, on the brief, was *Louise A. Brown,* assistant corporation counsel, for the appellee (defendant).

Spallone, J. During the early morning hours of July 5, 1982, an apartment building owned by the plaintiff and located in the city of Waterbury was destroyed by a fire in which fourteen people died. At the request

of the mayor of Waterbury, the defendant city arranged for the demolition of what remained of the building and the clearing of the site. This involved the retrieval of bodies and the sifting of the rubble for remains.

When the task was completed, the defendant, pursuant to General Statutes § 49-73b,[1] filed a lien in the amount of $35,421.54 on real estate owned by the plaintiff. The plaintiff applied to the Superior Court to discharge or reduce the lien. After a hearing, the trial court found that all of the expenses were properly liena-

---

[1] General Statutes § 49-73b provides: "(a) Any municipality which has incurred expenses for the inspection, repair, demolition, removal or other disposition of any real estate damaged by fire in order to secure such real estate or make it safe shall have the right to recover such expenses from the owner of the real estate for which such expenses were incurred.

"(b) The interest of each person in such real estate shall be subject to a lien for the payment of such expenses, which lien shall take precedence over any other incumbrance except municipal tax assessments on such real estate. No such lien shall be valid, unless the municipality, within thirty days after such work has ceased, files a certificate of such lien and gives notice to the owner of the real estate in the same manner as provided in section 49-34.

"(c) The interest of each person in the proceeds of any policy providing fire insurance coverage issued by an insurance company, including any policy written pursuant to the provisions of section 38-201h, shall be subject to a lien on such proceeds for the expenses incurred by a municipality pursuant to the provisions of subsection (a) of this section, provided such municipality, within thirty days after such work has ceased, files a certificate of such lien and gives notice to such interested person in the same manner as provided in section 49-34.

"(d) Any municipal lien filed pursuant to the provisions of this section may be foreclosed in the same manner as a mortgage.

"(e) Any certificate of lien filed pursuant to this section shall exist from the fifteenth day succeeding the date of entry of such certificate in the land records.

"(f) Any municipal lien filed pursuant to this section may be discharged or dissolved in the manner provided in sections 49-35a to 49-37, inclusive.

"(g) Nothing in this section shall prevent an insured owner, mortgagee, assignee or other interested party from negotiating a dissolution of any such lien on the fire insurance proceeds, enabling the insurance company to disburse said proceeds.

"(h) The provisions of this section shall not apply to policies on single-family or two-family dwellings."

ble except for $3732.40 in overtime pay for police department personnel engaged in investigating whether the fire started as a result of criminal activity. The court denied the application to discharge, but ordered that the amount of the lien be reduced to $31,689.14.[2]

The plaintiff has appealed from the trial court's action upon its application to discharge or reduce the lien. It claims that the court erred (1) in finding that the expenses were lienable under General Statutes § 49-73b, (2) in finding that the mayor of the city of Waterbury acted lawfully when he authorized the demolition of the property, and (3) by permitting an arson investigator to testify as an expert regarding whether the building was unsafe and should be demolished. We can find no error as to the plaintiff's second and third claims of error. As to its first claim of error, we disagree, in part, with the trial court's conclusion.

The facts as found by the trial court are substantially as follows. Detective Martin Eagan, of the office of the fire marshall of the city of Waterbury, was called to the scene of the fire at 2:30 a.m. on July 5, 1982. He found that the roof of the plaintiff's building had collapsed and that much of its interior had caved into the ceiling of the first floor apartments. The building was composed mainly of apartment units. Early reports indicated that at least a dozen persons were missing. It was ultimately determined that fourteen persons lost their lives as a consequence of the fire.

Eagan, who in the course of his career had investigated approximately 500 fires, determined about dawn that what remained of the building was a haz-

---

[2] The expenses found by the court to be reimbursable were as follows:

| | |
|---|---|
| Demolition and search for bodies by O & G | $19,690.60 |
| Overtime police services | 6,219.69 |
| Public works services rendered by the city of Waterbury | 5,778.85 |
| Total | $31,689.14 |

ard and unsafe to rescue workers and the public. He recommended to the mayor of the city, who had also arrived on the scene, that demolition be commenced at once. The mayor, by authority vested in him under the defendant's charter, invoked emergency powers and engaged a private construction company, O & G Construction Company (O & G), to demolish the structure and clear the site of debris in order to facilitate the rescue of possible survivors or the retrieval of bodies. Police department personnel were called to secure the property and to control nearby traffic.

O & G was required to remain on the scene for two weeks. The retrieval of bodies from the ruins was a time consuming operation which required sifting each bucket of rubble before it could be hauled from the site. Absent the need to recover the bodies, the demolition and clearing of the property would have taken three or four days at the most. O & G submitted a bill for $19,690.60; the rental of city equipment, which was also utilized in the operation, came to $5778.85; and charges for police and detective services amounted to $6219.69. As noted, the trial court excluded from the lien the amount of $3732.40 which was expended for detective services used in investigating the possibility of criminal activity as the cause of the fire.

I

Considering the plaintiff's claims of error in reverse order, we hold that as to its third claim of error, the court was correct in admitting the challenged testimony. The testimony in question was that of Eagan, who was called by the plaintiff to testify regarding the condition of the building.

The plaintiff contends that Eagan had no particular knowledge or experience which caused his opinion as to whether it was necessary to demolish the building to be of any aid to the court. It thus argues that the

trial court abused its discretion in admitting Eagan's testimony because he was not qualified as an expert witness. We disagree.

The trial court has broad discretion to determine the qualifications of expert witnesses. Its decision in this regard "will not be disturbed on appeal unless there has been an abuse of discretion or there was a clear error involving a misconception of the law." *McKiernan* v. *Caldor, Inc.,* 183 Conn. 164, 168, 438 A.2d 865 (1981); *Spoto* v. *Hayward Mfg. Co.,* 2 Conn. App. 663, 670, 482 A.2d 91 (1984). After it has been determined by the trial court that the witness is reasonably qualified to testify as an expert, the objection goes only to the weight accorded such testimony, not to its admissibility. *McKiernan* v. *Caldor, Inc.,* supra; *Loewenberg* v. *Tiger Lee Construction Co.,* 1 Conn. App. 303, 307, 471 A.2d 665 (1984). "The question of whether a sufficient foundation was laid is a factual question for the court. '[W]here the admissibility of evidence depends upon a preliminary question of fact, to be determined by the court, its decision is not to be reversed unless there is clear and manifest error.' *Engelke* v. *Wheatley,* 148 Conn. 398, 411, 171 A.2d 402 (1961)." *Spoto* v. *Hayward Mfg. Co.,* supra, 670. Guided by those standards, we cannot conclude that the trial court abused its broad discretion, or committed clear error misconceiving the law, in admitting Eagan's testimony.

## II

The plaintiff's second claim of error is that the court erred in finding that the mayor was acting lawfully when he authorized the demolition of the plaintiff's property. The plaintiff argues that the expenses incurred thereby were not properly lienable.

There is no merit to this claim. Section 2102 (a), Division 2 of the Waterbury city charter provides: "The Mayor shall have power: (a) To assume the entire con-

trol and direction of the police and fire forces of the city, or either of them, for a period not exceeding fifteen (15) days, at his discretion, in case of emergency, and to exercise all of the powers conferred upon the police and fire departments in relation thereto." Additionally, Section 2-37.2 of the city code, entitled "Powers and duties of Mayor," provides: "In the event of a disaster emergency the Mayor shall assume full command of all local government functions and facilities and personnel. All available local resources shall be brought to bear on the emergency existing in an effort to protect and preserve human life and property of the community to the greatest extent possible.

"The Mayor shall be limited only by the Governor of the State of Connecticut in state declared emergencies or the President of the United States of America in a declared national emergency."

By virtue of both of those sections, the mayor was authorized to assume full command of the situation that developed at the scene of the fire and to take all action necessary to protect and preserve human life and property.

Given this broad grant of power, there is nothing in the record that would justify an intrusion by this court, with the benefit of hindsight, into the factual findings made by the trial court with regard to the exercise of these emergency powers. The defendant's charter mandates that, in the event of a "disaster emergency," the mayor *shall* take command of the situation. Whether the appropriate conditions for the exercise of this power existed at the time was a question of fact, as is the question of whether the mayor properly executed those emergency powers under the circumstances. The findings of the trial court are amply supported by the evidence, and we are precluded from questioning them.

*Appliances, Inc.* v. *Yost,* 186 Conn. 673, 676–77, 443 A.2d 486 (1982); *Connecticut National Bank* v. *Nagy,* 2 Conn. App. 448, 449, 479 A.2d 1224 (1984).

## III

The plaintiff's claim that the trial court erred in failing to discharge the lien is also without merit. General Statutes § 49-73b (a) provides that "[a]ny municipality which has incurred expenses for the inspection, repair, demolition, removal or other disposition of any real estate damaged by fire in order to secure such real estate or to make it safe shall have the right to recover such expenses from the owner of the real estate for which such expenses were incurred." The trial court found that the language used in that statute is unambiguous and concluded that under the plain meaning of the words used therein, the defendant was entitled to reimbursement of all expenses except those incurred by detectives in investigating the cause of the fire.

While we find no error in the court's refusal to discharge the lien, we do find error in its conclusion as to the extent of the plaintiff's liability. In brief, we do not believe that the lien permitted by General Statutes § 49-73b encompasses the recovery of expenses incurred through the retrieval of dead bodies from the rubble.

The lien which the statute imposes requires a landowner to shoulder the cost of actions taken to secure real estate which a municipality, in the first instance, performs. The lienable expenses are, in logic, those which are necessary to render safe fire-damaged real estate which poses a threat to public safety. That these expenses should be recoverable from the owner flows naturally from the duty which every property owner bears to maintain his property in such a way as will not occasion unnecessary damage or annoyance to

others. *Maykut* v. *Plasko,* 170 Conn. 310, 314, 365 A.2d 1114 (1976). If a municipality were not reimbursed for these expenses, the owner would be unjustly enriched.

The distinction between those expenses for which a municipality is entitled to restitution under General Statutes § 49-73b and those which the municipality must bear was recognized by the trial court when it excluded the cost of the criminal investigation from the total amount of the lien. The court, however, did not pursue this distinction to its logical conclusion. The sifting of rubble to retrieve the dead bodies bore a close relation to the investigation. That this activity exceeded the scope of a private property owner's duty is evident from our statutes which pertain to the investigation of deaths which occur under suspicious circumstances. General Statutes (Rev. to 1981) §§ 19-530 and 19-531[3]

[3] General Statutes (Rev. to 1981) § 19-530 provides: "(a) The chief medical examiner shall investigate all human deaths in the following categories: (1) Violent deaths, whether apparently homicidal, suicidal or accidental, including but not limited to deaths due to thermal, chemical, electrical or radiation injury and deaths due to criminal abortion, whether apparently self-induced or not; (2) sudden or unexpected deaths not caused by readily recognizable disease; (3) deaths under suspicious circumstances; (4) deaths of persons whose bodies are to be cremated, buried at sea or otherwise disposed of so as to be thereafter unavailable for examination; (5) deaths related to disease resulting from employment or to accident while employed; (6) deaths related to disease which might constitute a threat to public health.

"(b) The chief medical examiner shall designate pathologists who are certified by the department of health services to perform autopsies in connection with the investigation of any deaths in the categories listed in subsection (a) of this section. Any state's attorney or assistant state's attorney, the chief medical examiner or an authorized assistant medical examiner shall have the right to require an autopsy by a pathologist so designated in any case in which there is a suspicion that death resulted from a criminal act. The official requiring said autopsy shall make a reasonable effort to notify whichever one of the following persons, eighteen years of age or older, assumes custody of the body for purposes of burial: Father, mother, husband, wife, child, guardian, next of kin, friend or any person charged by law with the responsibility for burial, that said autopsy has been required, however performance of said autopsy need not be delayed pending such notice.

"(c) If the investigation of the circumstances and examination of the body enable the chief medical examiner, the deputy medical examiner, associ-

set forth an array of governmental functions which are not capable of being performed by private citizens. Dead bodies and related evidence must be made available to the office of the chief medical examiner for investigation and post mortem examination where the deaths occur under suspicious circumstances. General Statutes (Rev. to 1981) §§ 19-530, 19-531. In cases of accidental death, the cause of which is obscure,

ate medical examiner or an authorized assistant medical examiner to conclude with reasonable certainty that death occurred from natural causes or obvious traumatic injury, and there are no other circumstances which would appear to require an autopsy, the medical examiner in charge shall certify the cause of death and file a report of his findings in the office of the chief medical examiner. If, in the opinion of such medical examiner, an autopsy is necessary, the same shall be performed at the office of the chief medical examiner or by a designated pathologist at a community hospital. Where indicated, the autopsy shall include toxicologic, histologic, microbiologic and serologic examinations. If a medical examiner has reason to suspect that a homicide has been committed, the autopsy shall be performed by the chief medical examiner or by a designated pathologist in the presence of at least one other designated pathologist if such other pathologist is immediately available. A detailed description of the findings of all autopsies shall be written or dictated during their progress. The findings of the investigation at the scene of death, the autopsy and any toxicologic, histologic, serologic and microbiologic examinations and the conclusions drawn therefrom shall be filed in the office of the chief medical examiner."

General Statutes (Rev. to 1981) § 19-531 provides: "(a) All law enforcement officers, state's attorneys, prosecuting attorneys, other officials, physicians, funeral directors, embalmers and other persons shall promptly notify the office of the chief medical examiner of any death coming to their attention which is subject to investigation by the chief medical examiner under this chapter, and shall assist in making dead bodies and related evidence available to that office for investigations and postmortem examinations, including autopsies, and shall cooperate fully with said office in making the investigations and examinations herein provided for. In conducting such investigations or examinations, the chief medical examiner may issue subpoenas requiring the production of medical reports, records or other documents concerning the death under investigation and compelling the attendance and testimony of any person having pertinent knowledge of such death.

"(b) In cases of apparent homicide or suicide, or of accidental death, the cause of which is obscure, the scene of the event shall not be disturbed until authorized by the chief medical examiner, the deputy chief medical exam-

"the scene of the event shall not be disturbed until authorized by the chief medical examiner, the deputy chief medical examiner, an associate medical examiner or an authorized assistant medical examiner." Such authorized examiners "shall view and take charge of the body without delay." General Statutes (Rev. to 1981) § 19-531 (b). General Statutes (Rev. to 1981) § 19-531 (d), in fact, provides for the imposition of criminal sanctions for the failure to comply with the provisions of that section.

We hold that only the expenses incurred by the defendant in rendering the property safe and secure were properly reimbursable under General Statutes § 49-73b. Our interpretation is consistent with the plain words of the statute. The expenses to be reimbursed relate to the "inspection, repair, demolition, removal or other disposition of any real estate" and no words in the statute refer to expenses unrelated to the securing or safety of the real estate. The trial court should have limited its application of § 49-73b to the functions necessary to render the premises safe so that the retrieval of the bodies could begin.

iner. Upon receipt of notification of a death as provided herein, the chief medical examiner, the deputy chief medical examiner, an associate medical examiner, or an authorized assistant medical examiner shall view and take charge of the body without delay.

"(c) In conducting his investigation, except as may be otherwise directed by the state's attorney or an assistant state's attorney, the chief medical examiner or his authorized representative shall take possession of any objects, writings or other articles of property which in his opinion may be useful in establishing the cause or manner of death and hold, analyze or deliver them to the appropriate law enforcement officials. When such articles are no longer required to be kept for the purposes of justice, they shall be delivered to the person or persons entitled to their custody or, if they are not claimed by such person or persons entitled thereto within one year after the date of death, such articles may be disposed of by the law enforcement official as provided in section 54-36.

"(d) Any person who wilfully fails to comply with any provision of this section shall be fined not more than five hundred dollars or imprisoned not more than one year, or both."

There is error in part, the judgment is affirmed except with regard to the amount of the lien, and the case is remanded for further proceedings limited to that issue.

In this opinion the other judges concurred.