[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION FOR SUMMARY JUDGMENT #212 AND MOTION FOR SUMMARY JUDGMENT #216
On October 23, 1989, plaintiff TIE/communications, Inc. ("TIE") filed a seven count complaint against defendants Robert J. Kopp, Integrated Power Technology, Inc. ("IPT"), and Elizabeth T. Kopp in the judicial district of Ansonia/Milford, to collect a debt pursuant to various agreements between these parties. TIE alleges that defendants Robert Kopp and IPT have defaulted in their obligations under certain notes and agreements, in which they agreed to indemnify TIE for providing credit and financial assistance to IPT.[1] TIE is seeking the unpaid amount under the notes, along with additional losses, liabilities and expenses.
The following facts are taken from the plaintiff's complaint. Plaintiff TIE is a corporation involved in designing, manufacturing and distributing business telephone systems. Defendant IPT is a corporation that designs and manufactures power supplies for use in these systems, and was initially formed on or about March 10, 1982, when TIE along with British company Harmer Simmons Ltd. formed the corporation under its prior name of Harmer Simmons Power Supply, Inc. ("HSPS"). On December 19, 1986, defendant Robert Kopp ("Kopp") purchased from TIE 100% of the stock of HSPS, thereafter known as IPT. Defendant Kopp is also the owner of two other corporations in the power supply business, Telephone Utilities 
Communications Industries, Inc. ("TUC Industries") and Telephone Utilities Communications Services, Inc. ("TUC Services"). The assets and services of the TUC companies were utilized by Kopp both to secure financing to purchase IPT, and to help in running the new corporation.
On September 7, 1987, TUC Services filed an action against TIE in the judicial district of Middlesex, in order to recover money allegedly due for work performed in reconditioning and repairing telephone and other equipment. TUC Services Co. v. TIE/communications, Inc., No. CV-89-053062S. TIE filed the present action in Ansonia/Milford on October 29, 1989, and subsequently filed a motion to transfer and consolidate the two actions on the ground that there were common issues of law and fact in the claims and defenses. On March 2, 1992, the court, Flynn, J., granted the motion. The pleadings of the TUC case are not before the court at this time.
Defendant IPT filed its answer, special defenses and counterclaim on March 29, 1990, alleging in counts one and two of its counterclaim a breach of the fiduciary duty owed to it by the plaintiff TIE during two different time periods, and alleging in CT Page 10321 count three a violation of the Connecticut Unfair Trade Practices Act ("CUTPA"), General Statutes 42-110a, et seq. On December 7, 1990, the court, Meadow, J., granted TIE's motion to strike count three of IPT's counterclaim, holding that CUTPA did not apply to a breach of fiduciary duty between a corporation and a shareholder. On May 15, 1992, plaintiff TIE filed its answer to counts one and two of the counterclaim, and raised the statute of limitations as a special defense to both remaining counts.
The defendant Kopp filed his second revised answer, special defenses and counterclaim on June 23, 1992. Kopp alleges in his counterclaim that certain representations made by TIE about IPT were false and fraudulent. In the first count of his counterclaim, Kopp further alleges that TIE's fraudulent misrepresentations caused monetary loss to him and loss of profits from two corporations solely owned by him, TUC Industries and TUC Services, as well as damage to Kopp's reputation. In the second count of his counterclaim, Kopp alleges that TIE's fraudulent misrepresentations constitute a violation of CUTPA. A motion to strike defendant Kopp's counterclaim was denied by the court on August 17, 1992. The court, Higgins, J., held that defendant Kopp had standing to bring his counterclaim and that CUTPA did apply to a sale of an interest in business effectuated by a transfer of stock. On. September 15, 1992, the plaintiff TIE filed its answer to the defendant Kopp's counterclaim, raising the statute of limitations as a special defense to both counts of the counterclaim.
On June 8, 1993, the plaintiff requested the permission of the court to file a motion for summary judgment against each of the defendants' counterclaims, pursuant to Practice Book 379. Judge Arena granted permission on June 9, 1993. Subsequently, on July 20, 1993, the plaintiff TIE filed a motion for summary judgment against Kopp's counterclaim, on the grounds that the counts are time-barred by the statute of limitations, lack the necessary elements of a fraud claim, and fail to state a cause of action under CUTPA. Also on July 20, 1993, the plaintiff filed a motion for summary judgment against IPT's counterclaim, on the grounds that both counts are time-barred by the statute of limitations, discharged by a general release and fail to state a claim for breach of fiduciary duty against TIE. Both defendants timely filed their respective memoranda in opposition on August 30, 1993.
Summary judgment is "designed to eliminate the delay and expense incident to a trial when there is no real issue to be tried." Dowling v. Kielak, 160 Conn. 14, 16, 273 A.2d 716 (1970). CT Page 10322 It is "applicable to counterclaims, so that any party may move for summary judgment on any counterclaim as if it were an independent action." United Oil Co. v. Urban Redevelopment Comm'n, 158 Conn. 364,376, 260 A.2d 596, 603 (1969). "The party moving for summary judgment has the burden of showing the absence of any genuine issue as to all the material facts, which, under applicable principles of substantive law, entitle him to judgment as a matter of law." State v. Goggin, 208 Conn. 606, 615, 546 A.2d 250 (1988), citing D.H.R. Construction Co. v. Donnelly, 180 Conn. 430, 434,429 A.2d 908 (1980). "Because the burden is on the movant, the evidence must be viewed in the light most favorable to the nonmovant and he is given the benefit of all favorable inferences that can be drawn." Id., 616.
In cases involving a statute of limitations, "[t]he trial court may grant summary judgment when the documents submitted in support of the . . . motion demonstrate that there is no genuine issue of material fact that the [counterclaim] is barred by the applicable statute of limitations." Shuster v. Buckley, 5 Conn. App. 473,477, 500 A.2d 240 (1985), citing Burns v. Hartford Hospital, 192 Conn. 451, 455, 472 A.2d 1257 (1984). Summary judgment is properly rendered only where the facts are not disputed and there appear "no countervailing circumstances impeding the normal application of the statute of limitations." Bartha v. Waterbury House Wrecking Co., 190 Conn. 8, 14, 459 A.2d 115 (1983). Defendant IPT's Counterclaims
In its two-count counterclaim IPT asserts two causes of action against TIE for breach of fiduciary duties allegedly owed, one relating to the relationship between the two corporations during the period prior to the sale of stock to defendant Kopp, and one addressed to the relationship subsequent to the sale.
Count 1
The defendant alleges that a fiduciary duty existed due to TIE's domination and control over HSPS, and further that TIE unjustly enriched itself at the expense of HSPS in violation of this duty. The plaintiff moves for summary judgment on the first count on the grounds that it is time-barred by the statute of limitations, discharged by a general release, and fails to state a claim for breach of fiduciary duty against TIE.
Fiduciary Duty CT Page 10323
The Connecticut Supreme Court has "specifically refused to define a fiduciary relationship in precise detail and in such a manner as to exclude new situations, choosing instead to leave the bars down for situations in which there is a justifiable trust confided on one side and a resulting superiority and influence on the other." (Citations omitted; internal quotation marks omitted.) Alaimo v. Royer, 188 Conn. 36, 41, 448 A.2d 207 (1982). IPT asserts in its counterclaim that a fiduciary duty existed due to TIE's domination and control over HSPS, and alleges several facts concerning the relationship between the corporations in order to prove this assertion. Counterclaim Count One, 6 (a-c), Count Two, 12 (a-g). IPT does not allege that a fiduciary duty arose by virtue of TIE's status as a minority shareholder, and therefore the plaintiff's arguments directed to this issue are inapposite.
Furthermore, IPT asserts that "[o]fficers and directors of TIE were also the officers and directors of IPT"; Counterclaim, Count One, 6(a); and it is well settled that "[a]n officer and director occupies a fiduciary relationship to the corporation and its stockholders." Katz Corporation v. T.H. Canty Co., 168 Conn. 201,207, 362 A.2d 975 (1975). The plaintiff offers nothing to controvert these allegations, which are presumed true for the purposes of a motion for summary judgment. Yanow v. Teal Industries, Inc., 178 Conn. 262, 265, 422 A.2d 311 (1979). IPT has sufficiently alleged the existence of a fiduciary obligation on behalf of TIE towards IPT, thus raising an issue of fact. Accordingly, summary judgment is denied on this ground.
Statute of Limitations
When a counterclaim is included in an answer, the filing of the answer marks the time for commencement of the action set up in the counterclaim, for purposes of determining the statute of limitations. Consolidated Motor Lines v. MM Transp. Co.,128 Conn. 107, 20 A.2d 621 (1941). The defendant is seeking damages for conduct which occurred prior to the sale of stock to defendant Kopp on December 19, 1986, which is more than three years before the filing of the counterclaim on March 29, 1990. Actions for breach of fiduciary duty are governed by the three-year statute of limitations set out in General Statutes 52-577. United Aircraft Corporation v. International Ass'n of Machinists, 161 Conn. 79,107, 285 A.2d 330 (1971), cert. denied, 404 U.S. 1016,92 S.Ct. 675, 30 L.Ed.2d 663 (1972) (Section 52-577 is applicable to all tort actions other than those carved out of 52-577). The defendant responds by asserting that TIE's alleged wrongful conduct CT Page 10324 constituted a "continuing course of conduct" that tolled the statute of limitations.
"To support a finding of a `continuing course of conduct' that may toll the statute of limitations there must be evidence of the breach of a duty that remained in existence after commission of the original wrong related thereto. That duty must not have terminated prior to commencement of the period allowed for bringing an action for such a wrong." Nardi v. AA Electronic Security Engineering, Inc., 32 Conn. App. 205, 212, ___ A.2d ___ (1993); citing Fichera v. Mine Hill Corporation, 207 Conn. 204, 209, 541 A.2d 472 (1988). "Where [the court] has upheld a finding that a duty continued to exist after the cessation of the act or duty relied upon, there has been evidence of either a special relationship between the parties giving rise to such a continuing duty or some later wrongful conduct of a defendant related to the prior act." Id.
IPT has sufficiently alleged the existence of a fiduciary duty between the two corporations to raise an issue of fact, as discussed above. Moreover, the defendant claims that TIE "remained in control of and able to dominate" IPT subsequent to December 19, 1986, up through February 8, 1989. Counterclaim, Count 2, 14. Therefore, the alleged "continuing course of conduct" did not terminate until after the three year statute of limitations began to run on March 29, 1987. In addition, the plaintiff has offered no evidence to refute the allegations of a breach of that duty. The uncontroverted pleadings therefore establish a continuing course of conduct in violation of the plaintiff's alleged fiduciary duty since at least 1982. These allegations thus raise genuine issues of material fact. The plaintiff has failed in its burden of showing the nonexistence of any genuine issue as regards the statute of limitations, since there exist countervailing circumstances that impede its normal application to the present case.
General Release
Finally, the plaintiff asserts that any alleged claims IPT may have had against TIE were conclusively discharged by a general release executed by defendant Kopp as part of the HSPS stock purchase transaction. However, a motion for summary judgment "should be supported by such documents as may be appropriate, including but not limited to affidavits, certified transcripts of testimony under oath, disclosures, written admissions and the like." Orenstein v. Old Buckingham Corporation, 205 Conn. 572, 574, 534 A.2d 1172 (1987). CT Page 10325 The plaintiff has failed to substantiate its assertion that a general release exists which is binding on IPT, other than a quotation in TIE's supporting memorandum.
Moreover, "[t]o oppose a motion for summary judgment successfully, the nonmovant must recite specific facts which contradict those stated in the movant's affidavits and documents." Hammer v. Lumberman's Mutual Casualty Co., 214 Conn. 573, 578,573 A.2d 699 (1990). IPT disputes the validity of any alleged general release on the grounds that the release is not supported by adequate consideration, and that it was obtained by trickery and/or deceit. Furthermore, IPT has provided an affidavit directed to these issues with its opposition to the motion for summary judgment, and has made identical claims in its reply to the plaintiff's special defense, which also asserted the bar of a general release. Given the plaintiff's lack of any supporting material for its allegations and its failure to address or counter IPT's response, a genuine issue of material fact is raised as to the validity and/or existence of the alleged general release. Accordingly, the motion for summary judgment fails on this ground as well, and the motion for summary judgment as to count one of IPT's counterclaim is denied.
Count 2
Count two of IPT's counterclaim alleges a continuing fiduciary duty between the plaintiff and IPT after the sale of stock to defendant Kopp on December 19, 1986, and seeks damages for TIE's alleged continuing breach of its fiduciary position. TIE moves for summary judgment on the ground that fiduciary duties cannot exist in commercial relations.
However, the plaintiff fails to provide any Connecticut case law supporting its interpretation, and the cases cited from other jurisdictions are unpersuasive. As stated above in addressing count one of the counterclaim, the Connecticut Supreme Court has chosen to "leave the bars down for situations in which there is a justifiable trust confided on one side and a resulting superiority and influence on the other." Alaimo v. Royer, supra, 41. Although TIE had sold out its minority share in the IPT corporation, the counterclaim alleges that TIE provided the necessary financial support to keep IPT operating, while at the same time deprived IPT of any profit by continuing to require below-cost power supplies for use in its business. IPT Counterclaim, Count 2, 12 (a-g). These allegations are presumed true for the purposes of a motion CT Page 10326 for summary judgment; Yanow v. Teal, supra; and provide a sufficient basis for the allegations of domination and control by the plaintiff TIE. Given the expansive view of fiduciary duty expressed by the court in Alaimo v. Royer, supra, it cannot be said "that the record in this case is as a matter of law inadequate to support a finding of a fiduciary relationship. " Id. Accordingly, the plaintiff's motion for summary judgment is denied as to the second count of IPT's counterclaim.
Defendant Kopp's Counterclaim
The first count of defendant Kopp's counterclaim asserts a cause of action against TIE for fraud in connection with Kopp's acquisition of HSPS, and the second count alleges violations of CUTPA. TIE initially attacks both counts on the ground that they are barred by the applicable statute of limitations. The plaintiff further challenges count one on the grounds that a cause of action in fraud is inappropriate in the present case, and that Kopp lacks standing to bring the action. In addition, TIE attacks count two of Kopp's counterclaim on the ground that CUTPA does not apply to a sale of securities.
Statute of Limitations
It is not disputed that the defendant Kopp purchased HSPS at a sale conducted on December 19, 1986, and that the counterclaims in issue were filed on December 15, 1989. This is within the three-year statute of limitations applicable to an action in fraud (General Statute 52-577), as well as the three-year limitations for CUTPA violations (General Statute 42-110g (f)). However, the plaintiff asserts that Kopp's cause of action accrued on the date of the conduct and misrepresentations complained of, not on the date of sale, and therefore the statute has run with regard to these fraudulent misrepresentations. Prokolkin v. General Motors Corporation, 170 Conn. 289, 365 A.2d 1180 (1976).
However, the alleged fraudulent misrepresentations of the plaintiff were never retracted or corrected by the plaintiff before the sale of the business was completed. "The intentional withholding of information for the purpose of inducing action has been regarded . . . as equivalent to a fraudulent misrepresentation." Pacelli Bros. Transportation, Inc. v. Pacelli,189 Conn. 401, 407, 456 A.2d 325 (1983). Fraudulent nondisclosure "involves the failure to make a full and fair disclosure of known facts connected with a matter about which a party has assumed to CT Page 10327 speak, under circumstances in which there is a duty to speak." Gelinas v. Gelinas, 10 Conn. App. 167, 173, 522 A.2d 295 (1987). Defendant Kopp in his counterclaim asserts that material misrepresentations were made right up to the time of sale, and that he relied on these misrepresentations in completing the deal.
Kopp asserts that TIE engaged in this continuing wrongful conduct in order to entice him into a contract against his interests. "To support a finding of a `continuing course of conduct' that may toll the statute of limitations there must be evidence of the breach of a duty that remained in existence after commission of the original wrong related thereto." Nardi v. AA Electronic Security Engineering, Inc., supra, 212. That duty exists where "there has been evidence of either a special relationship between the parties giving rise to such a continuing duty or some later wrongful conduct of a defendant related to the prior act." (Emphasis added.) Id. The alleged wrongful conduct of the plaintiff TIE was a "continuing course of conduct" that tolled the statute of limitations until the defendant was injured, which occurred at the earliest when the sale was completed on December 19, 1986. Since this is within the three year statute of limitations, summary judgment is denied on this ground.
Count 1
The plaintiff next argues that count one of Kopp's counterclaim is inappropriate because the cause of action in fraud arises from contractual relations between the parties. However, the plaintiff TIE's assertion that "[b]reach of contract claims dressed in the garb of a fraud action should be dismissed" is unsupported by the cases relied on by the plaintiff and contradicts Connecticut authority. "[T]he party may have his election to sue either upon the contract, or for the fraud, and in either case, so long as it appears that the party is entitled to the remedy he has selected, it can be no objection to the declaration, because it appears from it that he was also entitled to another remedy." Ives v. Carter, 24 Conn. 392 (1856). The defendant has pleaded the essential elements of an action in fraud: 1) that a false representation was made as a statement of fact; 2) that it was untrue and known to be untrue by the party making it; 3) that it was made to induce the other party to act on it; and 4) that the latter did so act on it to his injury. Miller v. Appleby,183 Conn. 51, 54-55, 438 A.2d 811 (1981). "Count One" of Kopp's counterclaim, when viewed in the light most favorable to him, sufficiently sets forth a cause of action in fraud under CT Page 10328 Connecticut law. The plaintiff has not set forth a sufficient legal basis for granting summary judgment.
Standing
The third argument raised by the plaintiff in its motion for summary judgment is that Kopp did not sustain a direct injury to the extent he seeks recovery for any alleged diminution in the value of the TUC companies. Since a plaintiff must establish that he sustained an injury as a direct and proximate result of his reliance on the defendant's misrepresentations, Miller v. Appleby, supra; the plaintiff asserts that the defendant has no standing to bring an action for these injuries. However, in the context of a motion to strike TIE argued that the court should strike Kopp's counterclaim because Kopp lacked standing to raise claims regarding injuries which occurred to corporate entities solely owned by Kopp, and the court, Higgins, J., denied the motion to strike on this ground. Memorandum of Decision on Motion to Strike Counterclaim (# 167), August 17, 1992. "New pleadings intended to raise again a question of law which has been already presented on the record and determined adversely to the pleader are not to be favored. . . ." Breen v. Phelps, 186 Conn. 86, 99, 439 A.2d 1066 (1982). The decision by the court, Higgins, J., on the motion to strike represents the law of the case on this issue, and the plaintiff has failed to present any convincing argument against its application to the motion for summary judgment.
Count 2
Finally, as to the second count of Kopp's counterclaim, TIE argues that "CUTPA does not apply to deceptive practices in the purchase and sale of securities." Russell v. Dean Witter Reynolds, Inc., 200 Conn. 172, 180, 510 A.2d 972 (1986). However, this issue was also raised in the plaintiff's earlier motion to strike, and the court determined that "the reasoning of Russell does not apply to a cause of action which alleges unfair trade practices in connection with the sale of an interest in a business where the transfer of stock is simply the means utilized to effectuate the sale. Barraco v. Ethel Allan, Inc., 6 Conn. Law Rptr. 176, 176-77 (February 6, 1992, Leheny, J.); Capuano v. Frasca, 4 CSCR 568, 568-69
(June 19, 1989, Thompson, J.)." Memorandum of Decision on Motion to Strike (# 167), supra, 5. The plaintiff asserts that the earlier ruling of the court is incorrect in light of the Supreme Court decision in Landreth Timber Co. v. Landreth, 471 U.S. 681,105 S.Ct. 2297, 85 L.Ed.2d 692 (1985). CT Page 10329
In that case the Supreme Court considered whether the sale of closely-held corporate stock fell within the definition of a "security" as that term is defined under the federal securities laws. Landreth Timber Co. v. Landreth, supra, 690. The court concluded that it was, and that the "sale of business" exception did not limit the reach of the Securities Exchange Act of 1934. Id. However, this holding has no bearing whatsoever on the question of whether CUTPA should apply as well when fraudulent misrepresentations are made during the sale of a business. The use of a stock sale simply as the means for effecting the transfer of the corporation should not remove it from the purview of CUTPA, when CUTPA would clearly apply if a sale of assets occurred instead. The earlier decision of the court is the law of the case on this issue, and TIE has failed to provide a persuasive reason to prevent its application to judgment.
JOHN WALSH, J.