### CATHERINE ALAIMO *v.* CLEMENT H. ROYER

SPEZIALE, C. J., PETERS, HEALEY, PARSKEY and SHEA, Js.

Argued May 5—decision released August 10, 1982

*Aaron P. Slitt,* with whom was *Susan H. Klock,* for the appellant (defendant).

*Augustus R. Southworth III,* for the appellee (plaintiff).

Peters, J. This is an appeal from a jury verdict finding the defendant liable for fraud. The defendant's principal claims of error challenge the trial court's instructions with regard to the plaintiff's burden of proof and the plaintiff's entitlement to both punitive and exemplary damages.

From the evidence presented at trial the jury might reasonably have found the following facts. Catherine Alaimo, the plaintiff, was a woman in her mid-sixties, living alone, when she met Clement H. Royer, the defendant, at a real estate investment club. The plaintiff, who suffers some physical and mental disabilities resulting from a childhood illness, sought advice from the defendant about the management of her life savings. The defendant, who was the president of the real estate investment club, held himself out to be a knowledgeable real estate and investment advisor. He encouraged the plaintiff to rely upon him.

In October, 1978 the plaintiff gave the defendant a check for $57,000 in return for a ten year promissory note in that amount at 10 percent interest; the defendant made monthly interest payments on the note only from October, 1978 to May, 1979. In December, 1978 the plaintiff, accompanied by the defendant, cashed her government bonds worth $2274.74 and gave the defendant a check for the proceeds. After a month of efforts by the plaintiff to contact him, the defendant issued another ten year promissory note, also at 10 percent interest, for the amount of the bonds and subsequently made five interest payments on that note.

The plaintiff brought an action charging the defendant with two counts of fraud. At a jury trial she claimed that she had entrusted her money to

the defendant for investment purposes. The defendant, however, testified that he was free to use the money as he saw fit and that he had in fact spent it all shortly after receipt on various business and personal needs. The jury found for the plaintiff and awarded her $150,000 in damages on a general verdict.

On this appeal the defendant claims error by the trial court (1) in its instructions on fraud; (2) in its instructions on exemplary and punitive damages; (3) in its admission of evidence concerning the defendant's other financial dealings; (4) in its permission to the plaintiff to call the defendant as a hostile witness after both parties had rested; and (5) in its acceptance of an excessive verdict. Since we find error in the trial court's instructions on fraud, we will address only those remaining claims which are likely to recur in a new trial.

## I

The claim of error that is dispositive of this appeal is the defendant's allegation that the trial court gave the jury inconsistent instructions on the plaintiff's burden in proving fraud. The transcript indicates that the jury were told: "The plaintiff has the burden of proving the fraud of the defendant by a fair preponderance of the evidence. Such fraud does not have to be proved beyond a reasonable doubt, which is the burden established in criminal cases.

"The plaintiff has met her burden as to any essential element in her cause of action, if the evidence, considered fairly and impartially, induces in your mind a reasonable belief that it was more probable than otherwise that the facts involved in that element were true.

"Fraud generally is not to be presumed, and must be strictly proven by clear, precise and unequivocal evidence. However, the intent to defraud involved [sic] the state of mind, and usually must be proven by circumstantial evidence. Intention is a mental process, and of necessity, it must be proved by the statements and acts of the person whose conduct is being scrutinized."

The defendant took a timely exception on the ground that the trial court had given the jury two inconsistent standards of proof, instead of the proper standard of proof by strict, clear and unequivocal evidence.

Connecticut case law firmly establishes that fraud must be proven by a standard more exacting than "a fair preponderance of the evidence." This court has most recently formulated the proper standard as "clear and satisfactory evidence." *Miller* v. *Appleby,* 183 Conn. 51, 55, 438 A.2d 811 (1981); see *Bruneau* v. *W. & W. Transportation Co.,* 138 Conn. 179, 182, 82 A.2d 923 (1951); *Hathaway* v. *Bornmann,* 137 Conn. 322, 325, 77 A.2d 91 (1950). A second line of cases prefers the language of the trial court, "clear, precise and unequivocal evidence." *DeLuca* v. *C. W. Blakeslee & Sons, Inc.,* 174 Conn. 535, 546, 391 A.2d 170 (1978); *Busker* v. *United Illuminating Co.,* 156 Conn. 456, 458–59, 242 A.2d 708 (1968); *Creelman* v. *Rogowski,* 152 Conn. 382, 384, 207 A.2d 272 (1965); *Basak* v. *Damutz,* 105 Conn. 378, 382–83, 135 A. 453 (1906); see *Lopinto* v. *Haines,* 185 Conn. 527, 534, 441 A.2d 151 (1981). Under either formulation, a plaintiff's burden cannot be equated with the fair preponderance standard of proof for ordinary civil actions.

Although the trial court ultimately furnished the jury with a correct version of the applicable standard, it did so only after two misstatements which failed to distinguish fraud from other elements in the plaintiff's cause of action. A charge which offers flatly inconsistent statements in close proximity to one another, without any attempted clarification or correction, may well mislead a jury in its critical deliberations. See *Bell* v. *Bihary,* 168 Conn. 269, 273, 362 A.2d 963 (1975); *Velardi* v. *Selwitz,* 165 Conn. 635, 638–39, 345 A.2d 527 (1974). Such a charge must be rejected as erroneous.

The defendant also objects to the trial court's instructions that the jury could, on the evidence before them, find a confidential or fiduciary relationship between the plaintiff and the defendant, and that such a finding would shift to the defendant "the burden of proving fairness, honesty and integrity in the transaction."[1] Since such a charge may again be given at a new trial, the issue is likely to recur, and we will review it at this time.

In describing the application of the law of fiduciary relationships to the facts of this case, the trial court charged the jury in the following manner: "[T]he evidence is that Mr. Royer held himself out to Miss Alaimo, among others, as an investment counselor, and the plaintiff has alleged that

[1] Although the defendant's brief also objects to the charge on the ground that this equitable doctrine is not available in the absence of a claim for restitution in the complaint, he did not raise this point when he excepted to the charge at trial and we need not address it now. In any event, we note that the plaintiff's complaint invoked the court's equitable powers by seeking "a temporary and permanent injunction prohibiting the defendant from transfering [sic], selling, assigning, or otherwise disposing of any of his real or personal property, or of the plaintiff's property in his possession or the proceeds thereof."

he represented that he would take care of her financially, that he would safeguard her money, and that she could place her trust in him."

The defendant argues that these facts are insufficient to support a finding of a fiduciary relationship that would warrant shifting the burden of proof. This court has, however, specifically refused to define "a fiduciary relationship in precise detail and in such a manner as to exclude new situations," choosing instead to leave "the bars down for situations in which there is a justifiable trust confided on one side and a resulting superiority and influence on the other." *Harper* v. *Adametz,* 142 Conn. 218, 225, 113 A.2d 136 (1955); see *Cohen* v. *Cohen,* 182 Conn. 193, 203, 438 A.2d 55 (1980); *Hieble* v. *Hieble,* 164 Conn. 56, 61, 316 A.2d 777 (1972); *Worobey* v. *Sibieth,* 136 Conn. 352, 359, 71 A.2d 80 (1949). We cannot say that the record in this case is as a matter of law inadequate to support a finding of a fiduciary relationship. Where such a relationship is found to exist, the burden of proving fair dealing properly shifts to the fiduciary. See *Worobey* v. *Sibieth,* supra; Dobbs, Remedies (1973) § 10.4.

## II

The defendant also claims error in the trial court's charge that the plaintiff could recover both punitive and exemplary damages. Since the plaintiff's complaint expressly seeks both varieties of damages, this issue is likely to recur and is properly addressed by us.

The trial court charged the jury that the plaintiff could recover four types of damages: compensation for her financial loss; compensation for her emotional distress and mental anguish; punitive damages, which include "such things as Miss Alaimo's

attorney's fees, and the costs and expenses of bringing the action"; and exemplary damages, which are "defined by statute, and are awarded where the fraud is gross and involves moral turpitude or moral culpability" under General Statutes § 52-564.[2] In distinguishing between punitive and exemplary damages and equating the latter with statutory treble damages the trial court erred.

This court has recently restated our long-standing rules governing the award of punitive damages: "Punitive damages are awarded when the evidence shows a reckless indifference to the rights of others or an intentional and wanton violation of those rights. . . . If awarded, they are restricted to cost of litigation less taxable costs of the action being tried and not that of any former trial. . . . Further, for an award of punitive damages it is essential that evidence of the cost of the litigation of the case being tried must be offered." (Citations omitted.) *Vandersluis* v. *Weil,* 176 Conn. 353, 358–59, 407 A.2d 982 (1978). Although some cases speak instead of exemplary damages, the same test is invoked and there can be little doubt that the two terms are merely alternate labels for the same remedy.[3] See, e.g., *Vandersluis* v. *Weil,* supra ("punitive or exemplary damages"); *United Aircraft Corporation* v. *International Assn. of Machinists,* 161 Conn. 79, 106, 285 A.2d 330 (1971) ("punitive or exemplary damages"); *Triangle Sheet Metal Works, Inc.* v. *Silver,* 154 Conn. 116, 127, 222 A.2d 220 (1966)

---

[2] "[General Statutes] Sec. 52-564. TREBLE DAMAGES FOR THEFT. Any person who steals any property of another, or knowingly receives and conceals stolen property, shall pay the owner treble his damages."

[3] Older cases use a variety of synonyms for punitive damages. See *Hull* v. *Douglass,* 79 Conn. 266, 272, 64 A. 351 (1906) ("exemplary, punitive, vindictive, or smart money"); *Welch* v. *Durand,* 36 Conn. 182, 185 (1869) ("penal sum or smart money"); *Dibble* v. *Morris,* 26 Conn. 416, 426 (1857) ("exemplary or vindictive" damages).

("punitive or exemplary damages"); *Infeld* v. *Sullivan,* 151 Conn. 506, 508, 199 A.2d 693 (1954) ("exemplary damages"); *Dalton* v. *Beers,* 38 Conn. 529 (1871) ("exemplary damages"); Prosser, Torts (4th Ed. 1971) § 2, p. 9; 4 Restatement (Second), Torts (1979) § 908, p. 464; Dobbs, supra, § 3.9, p. 205. In forging a new and unwarranted distinction between identities, the trial court erred.

Although the definition of punitive damages provided by *Vandersluis* v. *Weil,* supra, precludes the trial court's equation of exemplary and statutory damages, the court may upon retrial be asked to formulate a new charge on treble damages under General Statutes § 52-564. We will therefore respond to the defendant's claim that no such remedy is available where the complaint has not expressly invoked the relevant statute. This court has not previously settled this question with regard to General Statutes § 52-564, but our earlier cases considering similar statutes have consistently required that a plaintiff's claim for relief "be specifically based upon the statutory remedy" as well as factually within its boundaries. *Tillinghast* v. *Leppert,* 93 Conn. 247, 249–50, 105 A. 615 (1919); see *Dunbar* v. *Jones,* 87 Conn. 253, 256–57, 87 A. 787 (1913), expressly reversing prior law to the contrary. We see no present basis for reconsidering and rejecting this prudent predicate for the extraordinary statutory remedy of multiple damages.

Since the defendant's remaining claims of error are not likely to recur at a new trial, we need not resolve them today.

There is error, the judgment is set aside and a new trial is ordered.

In this opinion the other judges concurred.