[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
I.
Introduction
The present case is a summary process action in which the plaintiff seeks to recover possession of the premises, Store Nos. 3 and 4, 155 Hazard Avenue, a/k/a 151 B Hazard Avenue, Enfield, Connecticut, which it leased to the defendant tenant on or about April 7, 1988.
After receiving appropriate approvals, the defendant opened a package store known as Villa Package on July 27, 1988 and operated the store through February 1, 1990. The lease expired on February 23, 1990 and the defendant has allegedly remained in possession. The matter was previously tried before Susco, J., who rendered her decision on March 4, 1991. The defendant moved to set aside the judgment on March 6, 1991 pursuant to General Statutes 51-183b. This court granted said motion on March 12, 1991 and the matter was heard a second time on April 18, 1991. The parties filed trial briefs on or about May 2 and May 3, 1991.
 II.
Discussion
 A.
The plaintiff has alleged and proved that the defendant failed to pay rent for February 1990 in the amount of $3300.
While not at issue, the plaintiff also indicated that approximately six months rent was owed at that time and that no use or occupancy has been paid since then.
Robert Corriveau, the secretary of the defendant, confirmed that the rent had not been paid. He testified that no rent was due because the building was not lawfully completed. Essentially his argument was that the plaintiff CT Page 4820 failed to meet certain building and fire codes, as well as comply with all zoning regulations. Mr. Corriveau indicated that the defendant allowed its liquor license to lapse in June 1990 and it has not sought to renew its license.
 B.
The defendant has raised six special defenses to plaintiff's action. The defendant chose to not produce evidence on the First Special Defense (misrepresentation of location), and the Fifth Special Defense (misrepresentation as to occupancy) at trial. The Second Special Defense alleges that the plaintiff falsely represented that the building complied with planning and zoning regulations. The Third and Fourth Special Defenses allege that the plaintiff falsely represented that the building complied with building and fire codes. The Sixth Special Defense combines portions of alleged false representations concerning occupancy, building/fire codes and zoning issues. Defendant's counterclaim focuses on these same issues and seeks damage for improvements, salaries, time,
The Second and Sixth Special Defenses concern the alleged unlawful occupancy of the building as a result of the plaintiff's failure to comply with the zoning requirement to install a traffic light. That issue has arisen as a result of a decision of the Planning and Zoning Commission on October 1, 1979, approving the original subdivision of the property with the conditions that, inter alia, "approval is contingent upon the posting of bonds for sidewalks and traffic signal . . . installation of traffic signal on Hazard Avenue." (Exhibit 1)
While no light has been installed as of the time of trial, this court is not persuaded by that defense for a number of reasons. First, there are three documents, as well as the testimony of the zoning enforcement officer, that indicate the subject property was in compliance with zoning requirements. For instance, the applications for building permits indicate zoning approval as of December 28, 1987 (Exhibit 15) and again on February 1, 1990 (Exhibit 17). Town Attorney Walter Dudek in a memorandum dated May 5, 1988 to Wayne Bickley, Zoning Enforcement officer, noted that the defendant's premises complied with the zoning regulations. (Exhibit C). Likewise, Mr. Bickley wrote to the Department of Liquor Control on May 5, 1988 stating that a previous letter to the Department had been made in error (Exhibit 6) and that the subject premises complied with zoning. (Exhibit D). The certificate of occupancy granted in July 1988 indicated that there were no zoning, building, or fire code violations. (Exhibit E).
Based upon those approvals, the defendant obtained and CT Page 4821 commenced operation for many months. The defendant was well-aware of the light or the lack thereof from the very beginning. The lease, for instance, references the alleged light as follows; "stoplight to be installed if required by DOT" (site plan attached to lease). (Exhibits A; 7). The issue of the traffic light did not arise until after this suit was brought.
Mr. Bickley testified that the issue concerning the need for the traffic light was still not resolved. (Exhibit 13). Documents contained in Exhibit 13 indicate that as of February 3, 1989, DOT had no plans for the traffic light. Yet, as of March 1991, it appears that discussions were continuing towards the installation. The court notes that the plaintiff has bonded for the light. (Exhibits 2; 5; 9; 13).
Thus, it seems very clear that while the traffic light issue might be considered as an agenda item of "old business," it has never been considered a zoning violation. This court does not agree with the defendant that the failure to install the light constitutes a defect or a breach that goes to the heart of the parties' lease. Defendant's argument that no lease ever came into existence because of the failure to install the light is not supported by the evidence. This court is aware of our Appellate Court's recent decision in Sippin v. Ellam,24 Conn. App. 385 (1991), where the use of the property for commercial purpose violated both a restrictive covenant and the zoning laws. The present case is distinguishable as the only issue, which is still not resolved, is whether the plaintiff (or the town, or the state) will install a traffic light. This court disagrees with the defendant's premise that enforcing this lease would be enforcing an illegal agreement. Even if there was a zoning violation, this contract is merely collateral to the violation and thus, it is enforceable. La France v. La France, 122 Conn. 556, 560 (1937); Rosenblum v. Frankel, 108 N.Y.S.2d 6 (1951); Williston on Contracts, Third Edition, Section 1752. The defendant has in no way been precluded from operating its business by the zoning authorities, Sippin v. Ellam, supra. Indeed, in this case, just the opposite has occurred.
The next issues to address are those raised by the Third and Fourth Special Defenses, namely, that there were misrepresentations as to compliance with the building and fire codes. Mr. Richard Gilman, the Assistant Building official for Enfield, testified concerning the different requirements of the fire code for buildings with mixed occupancies. In this case, the building met the fire code when the defendant took occupancy and there were no fire code violations extant. Exhibit E, the application for the certificate of occupancy, CT Page 4822 indicates that both the Fire Marshal and the building department gave approvals for the subject premises. Moreover, in a letter of December 8, 1990, Town Attorney Christopher Bromson advised the defendant that there were no violations of the building code (Exhibit 10).
The court also heard testimony concerning a possible splitting of the two stores. Exhibit 17, dated February 1, 1990, notes that a proposed fire wall would be approved by the fire marshal. The defendant has failed to introduce any evidence that the building does not meet the appropriate codes.
The Sixth Special Defense, as mentioned, combines portions of the other special defenses. Those issues have been addressed.
This court notes that all the special defenses concern allegations or misrepresentation. Obviously the standard of proof that must be met by the defendant is greater than a fair preponderance of the evidence. Alamo v. Royer, 188 Conn. 36,39 (1982).
Nevertheless, even if the special defenses were not premised on "false representations" requiring such higher standards ("clear and satisfactory evidence", Miller v. Appleby, 183 Conn. 51, 55 (1981)), this court finds that the defendant has not proved by a preponderance of the evidence that it should succeed with such special defenses.
The defendant failed to introduce any evidence on its counterclaim.
 III.
Conclusion
Judgment for possession for nonpayment of rent shall enter for the plaintiff.
Berger, J.