[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
In March of 1987, the plaintiff agreed to purchase a 1976 30 foot Sea Ray boat from the defendant for the sum of $24,000 plus tax. The defendant agreed to place the boat into good mechanical condition and the plaintiff agreed to perform certain work on the boat himself including painting the bottom of the boat, supplying electronics and redoing the interior. While the written agreement between the parties does not provide a warranty, the plaintiff was given an oral warranty for thirty days with respect to the engines, which was subsequently confirmed in writing by the defendant's salesman.
The plaintiff had the opportunity to have the boat inspected by a third-party, but decided not to do so because of the warranty had received with respect to the engines.
In early May of 1987, the boat was delivered to the plaintiff. Shortly thereafter the plaintiff experienced problems with the starboard engine, and the boat was returned to the defendant for repairs. The defendant then performed a major overhaul on the starboard engine. The defendant expended many hours in diagnosing and effectuating the overhaul and expended additional sums for the parts relating to the work involved. No charge was made to the plaintiff with respect to the overhaul.
The boat was returned to the plaintiff in late June of 1987. The plaintiff used the boat sparingly the remainder of the 1987 season and did not experience any problems with the boat. In June of 1988, when the plaintiff began using the boat, the starboard engine again experienced problems and the boat was returned to the plaintiff. The cause of the problems with the starboard engine was diagnosed as a badly worn bearing. The representatives of the defendant told the plaintiff that it appeared that the wearing of CT Page 222 the bearing was caused by operating the engine with insufficient oil which the plaintiff denied. The defendant also offered evidence that the plaintiff did not properly winterize the engine and that the problems with the engine in 1988 were consistent with that failure. The defendant offered to repair the engine, but the plaintiff demanded that a new engine be placed in the boat. Accordingly, the parties agreed that the defendant would replace the block of the engine with a new Mercury short block utilizing the outer old parts to be reinstalled in the boat at a cost to the plaintiff not to exceed $2,000.
The defendant purchased new parts for the engine, including a cylinder block and crankshaft from Mercury Marine and installed a new starboard engine in the boat. The defendant prepared an invoice showing the cost of the work to be $7,154.82 and the defendant paid the sum of $2,000, as agreed, and there has been no further problems with the starboard engine.
In 1990 the plaintiff instituted the present litigation in which various claims are made including claims of common law fraud and fraudulent misrepresentations. Claims of fraud must be proven by either clear and convincing evidence, clear and satisfactory evidence. Dunham v. Dunham, 204 Conn. 303, 322 (1987); Alaimo v. Royer, 188 Conn. 36, 39 (1982). While there may be disagreements between the parties, the evidence falls far short of establishing fraud or fraudulent misrepresentations and the plaintiff has failed to satisfy his burden of proof with respect to those claims.
The plaintiff also claims that the utilization of a truck block in the 1987 repairs was improper. However, the plaintiff's own expert testified that the utilization of a truck block would be a suitable repair and would not reduce the value of the boat. The court finds that the work performed by the defendant in 1987 was in full compliance with the warranty made by the defendant.
The court likewise finds that the work performed by the defendant in 1988 was in compliance with its agreement made with defendant. While the plaintiff offered evidence to demonstrate that the parts utilized by the defendant were not marinized, the court finds that the plaintiff failed to sustain his burden of proof with respect to that issue and accordingly, finds the issues in favor of the defendant.
The plaintiff also claims that the utilization of a 260 horsepower engine on the starboard side in 1988 was inappropriate in view of the fact that the remaining engine on the boat had 255 horsepower. The court finds that the utilization of the parts used by the defendant in the 1988 repairs were proper and appropriate and that the horsepower differential did not exist because of the fact that accessory parts, such as a carburetor, govern the CT Page 223 available horsepower. The court likewise finds that none of the repairs or work performed by the defendant caused any reduction in the value of the boat.
The plaintiff also asserted that the boat did not have a holding tank when it was delivered to him and that the holding tank was required equipment under existing coast guard regulations. However, it does not appear that the plaintiff ever gave the defendant notice of any such deficiency and there was no evidence introduced with respect to the cost of any such repair that was incurred by the plaintiff. There was evidence that compliance with the cost guard regulations could have been performed for under the sum of $100. However, there was also evidence that there was in fact a holding tank on the boat prior to the time it was delivered to the plaintiff. Accordingly, the court finds the plaintiff has failed to sustain his burden of proof with respect to the issue of the holding tank.
In short, the court finds that the defendant fully complied with all its agreements, did not breach any express or implied warranty, and did not commit any violation of the Connecticut Unfair Trade Practices Act.
Accordingly, judgment may enter in favor of the defendant.
RUSH, J.