[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
In this case, the plaintiff has filed an amended complaint consisting of three counts. The first count sounds in fraud wherein the plaintiff alleges that he purchased an automobile from the defendant for a total of $15,500.00; that the defendant represented to him that said automobile had never been rebuilt and had never been in an accident; that he had purchased said automobile from a Massachusetts automobile CT Page 163 dealer; that the title was being sent from Massachusetts; also that the defendant would provide the title to the plaintiff when it arrived in Connecticut and that the defendant failed, refused and neglected to deliver said title to the plaintiff. Plaintiff further alleges that this was a salvaged vehicle that had been rebuilt and that the defendant had acquired said vehicle from a New Britain company which had in turn purchased it from a Massachusetts salvage company.
The plaintiff also alleges that the defendant represented that said automobile had never been in an accident, had not been rebuilt, that his misrepresentations were false and known by the defendant to be false at the time they were made and that the defendant knew or had reason to know that the plaintiff would act in reliance thereon and that the plaintiff purchased said vehicle in reliance upon these misrepresentations and as a result of the defendant's fraud, the plaintiff has suffered damages.
The second count sounds in negligent misrepresentation. In this count the plaintiff alleges that the defendant's promises that the vehicle had never been rebuilt and had never been in an accident constitutes misrepresentations which were made negligently by the defendant and that the defendant knew or should have known that the plaintiff would act or forbear from acting in reliance thereon and that he did act in reliance upon these misrepresentations to his damage.
In the third count the plaintiff alleges a breach of contract alleging that he and the defendant entered into a contract whereby the plaintiff agreed to pay the defendant $15,500 for a 1992 Ford Taurus SHO automobile; that the defendant had agreed that it had never been in an accident and had not been rebuilt; that the plaintiff performed all of the conditions of the contract on his part and that by reason of the failure of the defendant to perform his part of the contract, the plaintiff sustained damages.
The plaintiff claims money damages, punitive damages, interest, costs and attorney's fees and such other and further relief as the court may deem fair and equitable.
The defendant has denied liability under the allegations of the complaint, but admits that the vehicle was a rebuilt wrecked automobile and claims this was known to the plaintiff. CT Page 164
The plaintiff, Henry W. Siegrist, resides at 133 Sunset Ridge, Rocky Hill, Conn. The defendant, Zbigniew Kowalczyk, resides at 5 Perron Road, Plainville, Conn.
The court finds the following to be the facts:
The plaintiff, whose son was attending a college in West Hartford and living at home, had been shopping for a late model used car to be driven to school by his son. In response to an advertisement in the classified section of the Hartford Courant for a 1992 Ford Taurus SHO Sedan, plaintiff met with the defendant at the latter's home on September 27, 1993. The vehicle at that time would have had a retail value of about $18,175, if in good condition. The plaintiff inspected the vehicle, drove it about two miles and discussed its condition with the defendant.
The plaintiff noticed that there were some wires loose in the engine compartment and when he asked about this he was told that the car had had a security system but the wires had been cut when the vehicle was repossessed. He inquired of defendant whether the vehicle had ever been in an accident or had been rebuilt. He was told by the defendant that there was no damage to the car, that it had never been in an accident, that it was not a rebuilt car, that he purchased the vehicle from a dealer in Massachusetts where it had been repossessed and that he purchased it for his wife, but it was too powerful for her and she could not drive a car with a standard transmission.
Plaintiff asked to have the vehicle checked by a mechanic and was told that there was no need to; that the car was like new. He was satisfied with this answer and felt that the car did appear to be in good shape except for some blemishes in the rear seat.
The newspaper advertisement represented that the auto was in "Excellent" condition.
The defendant was asking $16,500.00. The plaintiff offered $15,500.00 which the defendant accepted and the defendant signed a Motor Vehicle Department Bill of Sale to plaintiff. No money passed on the date that the bill of sale was signed which was September 27, nor did plaintiff take CT Page 165 possession. On September 30th the plaintiff paid the defendant $2,000 and on or about October 1st the plaintiff, having borrowed the money from his credit union, paid the defendant $13,500. On that date the plaintiff took possession of the automobile. The defendant told the plaintiff that the automobile had been purchased in Massachusetts, that his wife had not had it for more than 2 months and that the title was being sent from Massachusetts and would be provided to the plaintiff when it arrived in Connecticut. When the plaintiff took possession of the car, he still did not have the title nor was it registered to him but the defendant gave permission for the plaintiff to take possession of the car and for his son to drive it back and forth to college until October 23rd, at which time the vehicle was registered.
The plaintiff began to have problems with the car shortly after the purchase, the first sign being a problem with a weak battery. The defendant indicated that he would replace same but never did. Later, leakage around the windows was discovered and around the door. In April of 1994, the son could not turn off the ignition switch and on April 25th plaintiff paid $277.46 for the repair of same. At this time, the plaintiff discovered that the car was not under warranty because the title had been branded T-1 as a salvaged vehicle.
The plaintiff had had the vehicle brought to Monoco Ford, a Ford dealership in Glastonbury, Conn., where it was put on a lift and examined by Dave Edwards, the Service Manager. From the condition of the vehicle, he determined that it had been in an accident and cosmetically rebuilt. He verified this by tracing the VIN number of the vehicle on the computer. At this time, the odometer read 21,098 miles.
On January 11, 1995 the plaintiff expended $74.41 to check complaints about the clutch and a light switch, etc. On January 26, 1995 he paid $855.26 for a new clutch and repair to the front end. The car was towed to the garage. On July 28, 1995 he paid $159.41 for an inertial switch because the vehicle would not start and had to be towed to the garage. The mileage then rad [read] 29,503 miles.
The plaintiff expended a total of $1,366.54 for repairs on the car. The plaintiff produced photographs showing the following evidence of repair work on the vehicle, all of which was there prior to the purchase of same: A handle for opening CT Page 166 the hood had been reinstalled upside down. There was water leakage around the rear doors and the rear windows. A support for the radiator was wrinkled. There was damage to the exhaust system. The photographs showed a poor welding job. In the spare wheel well there were dents. There was green paint on a piece of the engine showing a poor paint job. A sway bar had been welded back improperly with a tear in the metal on the underbody of the car. The plaintiff himself had done no mechanical repairs on the car at all nor had any been done by others except for that done at Monoco Ford.
On or about June 27, 1994 and on or about July 5, 1994, the plaintiff demanded a refund of the total purchase price of the automobile and the defendant refused.
In addition to the $15,500 the plaintiff paid approximately $900 in sales tax and registration fees. The vehicle odometer read 14,700 miles at the time it was purchased by the plaintiff.
The plaintiff met with the defendant approximately three or four times. At the second and third meetings with the defendant, Stanley Malec was present. He was also present when the car was registered. Stanley Malec is a former owner of a business known as continental Auto Body and also former owner of International Auto Body. He specialized in rebuilding salvaged motor vehicles when he was in business. He lost his license to do this type of work because of lack of financial responsibility.
The defendant and his wife, Kazimiera Marie Kowalczak, owned a business known as the commercial Maintenance corp., which specialized in cleaning of commercial buildings.
The defendant and his wife were also in the business of buying salvaged automobiles, having them rebuilt by Stanley Malec and selling them. They placed over 18 advertisements in the classified section of the Hartford Courant for the sale of the Ford Taurus, an Infinity, a Mazda, a BMW and a Lexus between August 18, 1993 and January, 1995. Each of these vehicles had been purchased from a salvage company, rebuilt and repaired by Stanley Malec.
The advertisement for the 1992 Ford Taurus SHO stated that it was in excellent condition. The defendant purchased CT Page 167 the car from Bob's Automotive Auto Body for $3,900 plus tax and had it repaired by Malec. The defendant claims he paid approximately $10,000 for the repairs to the Ford Taurus for labor, painting and parts, but the evidence offered does not substantiate that claim.
A search of the history of the Ford Taurus title indicated that it was in an accident on January 28, 1993, that it was inspected by the Metropolitan Property Casualty Insurance Co. on February 1, 1993, which issued a report labeling it as an "obvious total loss," a title was then issued to the Metropolitan Property Casualty Insurance Co., P.O. Box 157, Bellingham, MA, showing an odometer reading of 14,704 miles and labeling it "salvage vehicle;" "repairable-collision." This title certificate indicates an assignment of title on July 6, 1993 to Bob's Automotive. This title certificate also shows an assignment of title from Bob's Automotive to the defendant on August 17, 1993. This is a Massachusetts title certificate and was signed by defendant on August 13, 1993. The court is of the opinion that this title certificate was delivered to the defendant, was in his possession and could have been delivered to plaintiff.
On or about August 24, 1993 the defendant had the vehicle taken to the Motor Vehicle Department in Wethersfield where it was inspected as both an out-of-state vehicle and a salvaged vehicle. It passed the inspection and therefore was suitable to be registered.
On October 23, 1993 the plaintiff arranged to meet the defendant at the Motor vehicle Department building in New Britain in order to register the car. The defendant arrived with Stanley Malec. The defendant was to deliver the title certificate to the plaintiff. He indicated that it had not yet arrived from Massachusetts but that he could get a duplicate certificate of title issued, because he knew the procedure.
When applying for the registration, three forms were required. The inspection report, the application for a duplicate title and the application for registration. The application for registration bears the name of the lienholder if there is one. In this case there was a lienholder, being the Dutch Point Credit Union. The plaintiff was not shown the inspection report. The defendant presided over the CT Page 168 application and registration procedure saying that he knew the people in the Motor Vehicle Department and the vehicle was registered. The title certificate, when issued, was issued to the Dutch Point Credit Union in accordance with the custom of the Motor Vehicle Department and it bore the legend "rebuilt. rebuilt. rebuilt." The plaintiff, however, never saw the title certificate and was not aware that this was a rebuilt salvaged automobile until it was revealed to him at Monoco Ford in April 1994 and he never saw the title until he sought it from the state of Connecticut after the status of the vehicle was revealed to him by Monoco Ford.
Fraud is not to be presumed but must be proven by clear and satisfactory evidence. The essential elements for an action for fraudulent misrepresentation are:
1) That a false representation was made as a statement of fact;
2 ) That it was untrue and known to be untrue by the party making it;
3) That it was made to induce the other party to act on it; and
4) That the latter did so act on it to his injury.Miller v. Appleby, 183 Conn. 51 (1981).
To constitute fraud by non-disclosure or suppression, "there must be a failure to disclose known facts and . . . a request or an occasion or circumstance which imposes a duty to speak." Duksa v. Middletown, 173 Conn. 124, 127 (1977), Wedigv. Brinster, 1 Conn. App. 123, 131 (1983 ). This duty arises when a vendor of property conceals from the vendee a material fact affecting it. Jackson v. Jackson, 2 Conn. App. 179
(1984). Moreover, once a vendor undertakes to speak on a subject, he must make a full and fair disclosure as to that subject. Franchey v. Hannes, 159 Conn. 372, 379 (1965). In the opinion of this court there is clear and satisfactory evidence that the defendant perpetrated a fraud upon the plaintiff. Also that he breached the contract for the sale of the Ford to the plaintiff.
It is the general rule in Connecticut in awarding damages in a fraud action that the purchaser is entitled to recover CT Page 169 the difference in value between the property actually conveyed and the value of the property as it would have been had there been no false representation together with consequential damage which resulted directly from the fraud. Franchey v.Hannes, supra. The damages must be the natural and proximate consequence of the fraudulent representation complained of.Miller v. Appleby, supra; Kornblau v. McDermant, 90 Conn. 624,632 (1916). In this case, the defendant received a motor vehicle with a "branded title." It would, as testified to by the defendant and by Dave Edwards, the service manager of Monoco Ford who has had many years of experience working with salvaged vehicles, always carry a lesser value than a car that had not been labeled salvaged or rebuilt. While the defendant placed a value of $4,000 upon the vehicle for which he paid $15,500, Dave Edwards, a person of great experience in the field, placed a value of $6,000 on same. In addition to the decreased value of the vehicle, any warranty attached thereto, had been invalidated.
Considering the age and the mileage on the vehicle, and the fact that Mr. Edwards went to check the computer for the warranty when he discovered that it had been invalidated, it appears to the court that the warranty on this vehicle would have been effective and the various repairs paid for by the defendant would have been covered by the warranty had the car not been a salvaged rebuilt vehicle.
The court therefore awards to the plaintiff damages in the amount of $10,866.54 being the difference of $9,500.00 between the value of the car when purchased and the price which plaintiff paid plus $1,366.54 being the total of the repairs.
Punitive damages are awarded when the evidence shows a reckless indifference to the rights of others or an intentional or wanton violation of those rights. Alaimo v.Royer, 188 Conn. 36 (1982). Punitive or exemplary damages in a fraud case include attorney's fees. Brower v. Perkins,135 Conn. 675, 681 (1949). They are limited to the cost of litigation less taxable costs but within that limitation the extent of which they are awarded is in the discretion of the trier. Chykirda v. Yanush, 131 Conn. 565, 568 (1945). It is also within the discretion of the court to include interest in an award of punitive damages. Scribner v. O'Brien, Inc.,169 Conn. 389, 406 (1975). CT Page 170
The court has examined the affidavit of attorney's fees filed in the above case by the plaintiff's attorney and finds them to be fair and reasonable as to time spent. In the opinion of the court, a reasonable attorney's fee would be $6,575.
With respect to the plaintiff's claim of treble damages under Section 52-564 of the Connecticut General Statutes, our Supreme Court in Alaimo v. Royer, 188 Conn. 36, 43 (1982) in responding to a defendant's claim that no such remedy was available where the complaint had not expressly invoked the relevant statute stated "this court has not previously settled this question with regard to General Statutes Section 52-564, but our earlier cases considering similar statutes have consistently required that a plaintiff's claim for relief `be specifically based upon the statutory remedy as well as factually within its boundaries, Tillinghast v. Leppert,93 Conn. 247, 249 . . . we see no present basis for reconsidering and rejecting this prudent predicate for the extraordinary statutory remedy of multiple damages." Since treble damages under Sec. 53a-564 C.G.S. was not claimed in the complaint, the court is of the opinion that treble damages cannot be awarded in this situation.
While the court recognizes that the plaintiff had the use of this vehicle for approximately 14,300 miles, this use was marred by need for repairs and interruption in the use of the car for approximately 4 months and thus the court will not allow any adjustment for the use of the automobile.
In the opinion of the court, the allegation of fraud was not only substantiated by clear and satisfactory evidence but also was intentional so the court will award interest on the compensatory damages of $10,866.54 from September 27, 1993 to the date of this decision.
Accordingly, judgment may enter for the plaintiff in the amount of $10,866.54, plus interest thereon as compensatory damages and $6,575 in attorney's fees, plus taxable costs.
Hale, Judge Referee. CT Page 171