[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff seeks to recover of the defendant the amount of a bond, posted by the defendant but with funds loaned to the plaintiff by a third party. The purpose of the bond was to guarantee the plaintiff's appearance in proceedings before the United States Immigration and Nationalization Service (INS).
There is no dispute that the plaintiff fulfilled the conditions of the bond and that it was returned to the defendant by the INS. The defendant claims via a counterclaim that he loaned the plaintiff $1,900 prior to the return of the bond. The check from the INS was in the amount of $2,906.85.
In his court testimony, the defendant stated that he actually had loaned the plaintiff "close to $2,300." His counterclaim sets forth three separate "loans" totalling $1,900. In response to a question by the court as to why he did not remit the balance (i.e. between $1,900 or $2,300 and the $2,906.85) to the plaintiff, the defendant responded that he did not know where the plaintiff was. The plaintiff filed an offer of judgment for $2,900.00. No offer of judgment in any lesser amount than $2,906.85 was filed by the defendant and he offered no evidence of a tender in such an amount.
 I.
Under the circumstances outlined above, credibility is a vital element in this case. The court finds it significant that the defendant has no note, check, receipt or memo establishing these three "loans". This despite the fact that they were to be deducted by him from the INS check when it was received.
These "loans" were allegedly made in cash, in the amounts of $400, $600 and $900. The $600 transaction raises points worthy of comment. Though originally pleaded as occurring in 1984, this is supposed to have occurred in November of 1986. According to the defendant, the plaintiff was to come to his residence on the evening of the day in question to collect the $600. However, the defendant and David Gamage, a friend of his, testified that the CT Page 4381 plaintiff appeared unexpectedly at a state forest where they had just set up for a day of hunting. The defendant purportedly proceeded to count out $600 and hand it to the plaintiff. Mr. Gamage recalled this episode and even remembered the defendant saying that the $600 payment was "towards the bond." One wonders why this transaction, the last of three alleged loans, elicited that comment from the defendant. Also if the plaintiff was not expected until after a day in the woods, one puzzles over why the $600 in cash went with the defendant, clothed in his hunting outfit and encumbered by gear. Unexplained too is the reasons for the hunting session being terminated by the plaintiff's arrival if all that had to be done was for the defendant to hand over the money.
The $400 and $900 loans also raise serious questions. They were allegedly made in September and October of 1985. The plaintiff produced personal checks dated between September 21, 1985 and February 21, 1986 and a Minnesota Driver License to support his testimony that he was living in that state during that period.
The Court also questions the defendant's explanations of his failure to send the plaintiff the balance due him after deducting the alleged loans. In part, his first response was he didn't know where the plaintiff was. Even if all of these cash advances were deducted, the plaintiff was entitled to something over $600, not the few hundred dollars suggested by the defendant in his response to the court's question on this subject. It would have been at least $200. without the accumulated interest of over $400, a sum of which the plaintiff would be ignorant until the plaintiff inquired of the INS as to the status of this refund check which the defendant had cashed. Having posted the plaintiff's bond with the INS, and with the immigration matter pending, an inquiry to that agency could well have produced the plaintiff's address. This behavior on the part of the defendant strongly supports the proposition that he intended to convert the bond proceeds to his own use from the date he received the check in 1990.
The defendant had still another explanation as to why he hadn't paid over the proceeds to the plaintiff, this being that the plaintiff would not accept the balance due after the defendant deducted the amount of the loans.
Contrasted with the testimony of the defendant and his CT Page 4382 witnesses, the testimony of the plaintiff sums the more reasonable, plausible and believable.
It is therefore the conclusion of the court that these claimed loans never occurred and that on April 11, 1990 the plaintiff was entitled to the proceeds of the check in the amount of $2,906.85.
This conclusion was reached after the court had taped testimony re-played to resolve conflicting versions of evidence raised by counsel.
 II
In view of the Court's conclusion above, judgment must enter for the plaintiff on the defendant's counterclaim.
 III
At trial, counsel raised the statute of frauds and the statute of limitations. These issues would only have been considered had the court found that the loans had been made. Therefore, the court finds the issues so raised to be moot and will not address the claims on the merits.
 IV
The plaintiff has included in his prayer for relief treble damages pursuant to § 52-564 of the Connecticut General Statutes. Such an award is possible only when the trier finds the alleged action to have been committed by clear and convincing evidence. Alaimo v. Royer, 188 Conn. 36, 39 (1982). The court finds that the plaintiff has sustained that burden of proof and is entitled to treble damages. As was noted above this plaintiff had money coming to him even if all of the loans allegedly made were found to have been made, including one for $375 "made in private" which the defendant did not offer testimony on. The several explanations as to why the defendant did not return any money to the plaintiff underscore the court's determination.
 V
a. The plaintiff filed an offer of judgment on June 21, 1994, which was "not later than 18 months from the filing of the complaint" on March 17, 1993. The offer was in the amount of CT Page 4383 $2,900.00 and was not accepted by the defendant. Therefore, the plaintiff, is entitled to 12% interest per annum on the amount of the "amount recovered," as set out in Section IV above.
b. The plaintiff is also awarded $350 attorney's fees, both of these awards being pursuant to § 52-192a(b).
 VI
The plaintiff is entitled to recover of the defendant the amount of $2,906.85, together with interest at the rate of 10% per annum pursuant to § 37-3a, commencing on April 13, 1990, said date being the estimated date of the conversion by the defendant of the check dated April 11, 1990.
CONCLUSION
In summary, judgment may enter for the plaintiff to recover of the defendant the following:
 A. Basic award, check proceeds: $2,906.85 Interest, 4/13/90 — 4/12/97, § 37-3a: 2,034.80
 B. Per § 52-192a (b), interest 2,414.83 from 3/17/93 to 4/12/97 at 12% per annum on item A, $4,941.65.
 C. Per § 52-192a(b), attorney's fee 350.00
sub total $7,706.48
Treble damages, per § 52-564 $23,119.44
The plaintiff is entitled to taxable costs.
Anthony V. DeMayo Judge Trial Referee