[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: PREJUDGMENT REMEDY
Plaintiff brought this action by substitute complaint in three counts claiming that a corporation in which he was a shareholder fraudulently sold its only assets to a corporation of which defendant was the sole shareholder in the first count; fraud by defendant as a trustee in the second count and a claim under C.G.S. § 52-564 of stealing, in the third count.
Defendant has filed two special defenses as to each count.
At a hearing on the application for a prejudgment remedy held CT Page 5711 April 29, 1997 this court took evidence.
I. Facts for Prejudgment Remedy
Plaintiff and defendant both graduated from law school. Plaintiff practiced; defendant did not.
On or about December 23, 1986 a corporation called Litchfield Holdings, Inc. (Litchfield) brought two pieces of real property in Hartford known as #43 and 53 Wadsworth Street (the Property) for about $430,000. That corporation was owned by three shareholders, namely plaintiff, 333 shares; Thomas Donegan (Donegan) 333 shares; and defendant 334 shares. The plaintiff's shares were held in the name of defendant. Plaintiff was then a young practicing attorney.
Plaintiff was then married to Sandra Cassidento a/k/a Sandra Levy, who often acted for her husband in regard to Litchfield.
The claims under the third count were brought on or about September 13, 1996. This action was brought April 16, 1994. The plaintiff was aware of any claims under C.G.S. § 52-564 on or before April 13, 1994. That statute sounds in tort and the statute of limitations for actions founded upon a tort is "three years from the date of the act or omission complained of" C.G.S. § 52-577.
An appraisal of the Property was made July 9, 1990 and a fair market value of $580,000 was given subject to "these improvements." The improvements were to repair and improve the property to "bring it to average/good condition". Such repairs were never done and thus the court cannot rely on that appraisal.
The evidence is clear that Number 53 Wadsworth Street was purchased by Whitehead-Mather, Inc. on or about June 2, 1986, and number 43 on October 27, 1986. The parties seem to agree that the total purchase price was $430,000.
On December 23, 1988 both number 43 and 53 were deeded to Litchfield and no conveyance tax was collected on either.
On November 21, 1990 defendant as president of Litchfield caused to be sent a notice to plaintiff and Donegan of a meeting of the directors and shareholders to be held December 1, 1990 to consider: CT Page 5712
 "1. The conveyance by the corporation of real property known as 43 and 53 Wadsworth Street, Hartford, Connecticut to the present mortgagee or to any other party in consideration for the assumption, forgiveness, or satisfaction of the encumbrances on and claims against the premises.
 2. The dissolution of the corporation and the winding-up of its business."
Both received that notice. On November 30, 1990 Donegan gave defendant a proxy to vote all of Donegan's shares at that meeting "and particularly to consider, determine and vote on the conveyance of real property known as 43 and 53 Wadsworth Street, Hartford, Connecticut and the dissolution of the corporation." On May 6, 1990 plaintiff gave to his wife his "full proxy to vote the shares as she sees fit". He also told Litchfield that she "will attend the [May 12, 1990] meeting and act accordingly."
Wadsworth-Hartford Holdings, Inc. (Wadsworth) was organized on November 12, 1990 and its certificate of organization was filed with the Connecticut Secretary of State on December 10, 1990. Defendant was the sole shareholder of Wadsworth.
Litchfield was dissolved by vote of 667 shares of 1000 issued on December 26, 1990 and a certificate of that dissolution was filed with the Connecticut Secretary of State on December 28, 1990. Plaintiffs' shares were not voted.
On December 26, 1990 Litchfield conveyed the Property to Wadsworth and a state conveyance tax of $2,550.60 was paid. Wadsworth paid a gross purchase price of $340,000 and assumed or paid taxes to the City of Hartford of $19,725.26; a judgment lien of $2,695.26; recording fees of $30; and two mortgages to the lending bank totaling $317,569.84. Thus the net amount that Wadsworth paid was $342,910.96.
Defendant had guaranteed the two mortgages from Litchfield to the bank and upon transfer to Wadsworth guaranteed the new mortgage from Wadsworth.
The action is heavily based on the claim that defendant was a trustee in holding the plaintiff's stock in Litchfield. Defendant did nothing to or with that stock that would suggest any trustee CT Page 5713 relationship with plaintiff except have it in his name. The court can find no probable cause that a trustee relationship was ever intended or entered into by the parties.
The negative cash flow that the Property generated prompted all parties to seek a solution. Efforts to sell were fruitless. Plaintiff suggested simply giving it "back to the bank". This was tried but the bank refused to accept it. The bank considered the fair market value of the Property to be less than the mortgage and thus wished to retain defendant's guarantee.
II. LAW
At the hearing this court was required to receive evidence as to any defenses the defendant might have. C.G.S. 52-278d.
A. Statute of Limitations
 1. First Count
The first count is based on a shareholder claim that the corporation fraudulently sold its sole asset on December 26, 1990. This action was begun April 16, 1994. The applicable three year statute of limitations is C.G.S. § 52-577 for tort claims. Fraud is a tort claim and thus the three year period is applicable. This count was not timely brought. Wedig v. Brinster,1 Conn. App. 123, 136-137.
2. Second Count
The second count is brought for fraud by a trustee. As to fraud alone as was said about the first count, the statute has run.
In regard to fraud by a trustee, the court has found no trustee relationship. In addition, the statute of limitations is the same. In re: Colonial Ltd. Partnership Litigation,854 F. Sup. 64, 90 (Colonial).
Fraud itself must be proven by clear, precise and unequivocal evidence. DeLuca v. C.W. Blakeslee Sons. Inc., 174 Conn. 535,546. This court would have to find probable cause that plaintiff will sustain that burden on trial. This the court cannot do.
3. Third Count
CT Page 5714
The third count is brought for stealing under C.G.S. §52-564 and seeks treble damages. Stealing is a tort. Colonial
supra 90. Thus, the same three year statute of limitations is applicable.
Fraud consists in deception practiced in order to induce another to part with property or surrender some legal right, and which accomplishes the end desired.
B. Concealment
The plaintiff claims that defendant hid or concealed his actions in regard to all three counts. In addition, he says that he did not discover the actions "until late January 1996 at the time of the institution of this litigation". Plaintiff offers no evidence of the defendant making a misrepresentation of fact.
A plaintiff is required to bring his tort actions within three years of suffering some form of actionable harm. The actionable harm "occurs when plaintiff discovers, or in the exercise of reasonable care should have discovered, the essential elements of a cause of action." Lambert v. Stovell, 205 Conn. 1,6.
Defendant asserts that there were public records on file with the secretary of state that should have alerted plaintiff to the transfer of the property to Wadsworth. Although it is true that plaintiff had substantial notice that a sale was to take place and legal knowledge that after a sale the deed would be recorded in the land records of the City of Hartford, he had no duty to check those records and then follow those land records t the secretary of state's office to see who the buyer Wadsworth was owned or run by. Aksomitas v. Aksomitas, 205 Conn. 93, 98-99. If defendant were a trustee or other fiduciary he would have had a duty to affirmatively reveal all those details. id 99-100.
The defendant, even as a trustee, received no benefit from either the transfer or the new mortgage arrangement.
The court has no evidence that plaintiff knew the proposed purchase price before the transfer.
In concealment or fraudulent non-disclosure action the key element "is that there must be circumstances which impose a duty CT Page 5715 to speak". Jackson v. Jackson, 2 Conn. App. 179, 194. "[T]here must be a failure to disclose known facts and, in addition thereto, a request on an occasion or a circumstances which imposes a duty to speak". Egan v. Hudson Nut Products, Inc.,142 Conn. 344, 347.
To prove fraudulent concealment the plaintiff is required to establish that defendant "intentionally concealed the facts necessary to establish his cause of action." Connell v. Connell,214 Conn. 242-250. This the plaintiff has not done.
C. Trusteeship
Of course, there is no trust agreement, either written or oral. Thus, we must decide whether the duty of a trustee has fallen on defendant by law.
Plaintiff claims that the fact that the defendant held plaintiff's shares in defendant's name proves that defendant held those shares in trust for the benefit of plaintiff. "A fiduciary or confidential relationship is characterized by a unique degree of trust and confidence between the parties, one of whom has superior knowledge, skill or expertise and is under a duty to represent the other." Dunham v. Dunham, 204 Conn. 303, 322. The reason for the rule is that "[T]he superior position of the fiduciary or dominant party affords him great opportunity for abuse of the confidence reposed in him". id 322. In our situation we have no unique degree of trust or confidence. Plaintiff or his wife always voted his shares. Plaintiff was always told in advance of meetings which he could attend as a shareholder. Defendant had no superior knowledge, skill or expertise. The court can find no duty owed by defendant to represent plaintiff when plaintiff plainly represented himself. But cf. Alaimo v.Royer, 188 Conn. 36, 40-41.
There was an opportunity for abuse but it was never a "great opportunity".
D. Damages
The Property was bought in 1986 for $430,000. The real estate market in the City of hartford "went down" beginning in 1988. One building of the Property was boarded up and had no tenants. The other building had one which paid $18,000 to $19,000 annual rent. The city taxes were $18,000. Attempts to sell were fruitless. CT Page 5716 There was no equity in the Property.
The sale to Wadsworth resulted in no gain to defendant or loss to plaintiff.
Under these circumstances the court can find probable cause that plaintiff will prevail. Application denied.
N. O'Neill, J.