[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff mother, Maried Tirado, gave birth to a child, Cody Tirado, on May 31, 1995. On August 31, 1995[1], the defendant father, Santos Rivera, signed an Acknowledgment of Paternity. On November 9, 1995, the State commenced a support petition pursuant to General Statutes § 46b-215.
With the parties both in court, on February 5, 1996, Ginsburg, F.S.M. entered a support order and an arrearage finding. Subsequently, the defendant father filed a motion to modify the support order, and while the plaintiff mother appeared on the initial court date of that motion, she failed to appear on the continuance date, and the support order was reduced.
On May 28, 1997, the parties were both in Superior Court, Levine, J., on the defendant father's motion for visitation. At the inception of that visitation hearing the plaintiff mother told Judge Levine that she "want[ed] a paternity test done before anything"[2]. In response, Judge Levine stated "You understand that if he's not the father you're not going to get child support?" The mother replied "I understand that, sir." After hearing from both parties that the father had since the child's birth visited the child with some regularity, Judge Levine further questioned the plaintiff mother, "You already said he's the father?," and the plaintiff mother responded "I'm sorry to say but it was convenience at the time." Judge Levine then took judicial notice of the plaintiff mother's sworn statement, in the Paternity Acknowledgment, that Santos Rivera was the father of Cody Tirado, and reminded Ms. Tirado that she was under oath at the time she made that affirmation of paternity. The plaintiff CT Page 15609 mother stated that she understood that if she lied at the time of the affirmation it was a criminal matter and she then explained "Your Honor, the reason it was that when I was going out with him [Rivera] I was going out with Alex and I went to bed with him [Rivera] three times and with Alex I used to do it like every other day, so — he [Rivera] was there, he was going out with me, I figured that he [Rivera] would . . ." At this point in the visitation hearing, Judge Levine concluded "Okay I'll order a blood test", but then reversed this order with "I'm sorry, you've already waived your right to a blood test. Okay. There's no issue that whether he is the father, he is the father, that you have both said it under oath." The remainder of the hearing covered the setting up of a visitation schedule.
On June 2, 1997, the plaintiff mother filed a motion to modify the financial orders, however, there is no information in the file that either she or the State prosecuted that motion. In a petition dated December 3, 1997, the defendant father filed a pro se motion to open the judgment of paternity. The motion requests "Blood test or Paternity test." Apparently, the sheriff who was hired to serve the motion misread the [correct] address of the plaintiff mother on the motion and no hearing went forward at that time because she was not present in court.
The defendant father again filed a motion to open the judgment of paternity on February 2, 1999, stating "The petitioner (Maried Tirado) stated to me (Santos Rivera) that the child (Cody Rivera) is not mine. After 2 1/2 years." The pro se defendant father completed all the necessary procedural requirements for a hearing calendared for March 16, 1999. On that date, both parties were present in court. The defendant father began the presentation of his motion by sharing that his concerns regarding the paternity of Cody were best founded in the several statements made by the plaintiff mother in front of Judge Levine. The Magistrate therefore promptly directed that the defendant obtain a transcript of that hearing. In the presence of both parties and the State, the Magistrate ordered all parties to be in court on the June 1, 1999, to continue the hearing on the motion to open.
On June 1, 1999, the plaintiff mother failed to return to court. When questioned by the court, the State had no information as to why the mother did not return to court as ordered. Taking into account the numerous times, since May 1997, that the defendant had attempted to get a hearing on his paternity issues, CT Page 15610 the court allowed the hearing to go forward without the plaintiff mother present. At this hearing, the defendant gave sworn testimony, and also offered into evidence, without objection from the State, the transcript from the visitation hearing in front of Judge Levine. In recognition of Cody Tirado's independent interest, the court appointed Attorney Sean Crowshaw as counsel for the child. He participated fully in these proceedings. The State had ample opportunity to question both the defendant father and the attorney for the child.
The State opposed the motion. There is no doubt that the State of Connecticut has an interest which would be prejudiced by opening the judgment. There is the direct out-of-pocket cost of the past and any future public assistance paid on behalf of the child. If the judgment is opened and the defendant is found not to be the child's father, the State will be required to refund any money it collected through the support order.[3] Liability for past due support against any subsequently named putative father is limited to three years prior to the commencement of the new paternity case. It may be difficult at this time, to even locate the true biological father for establishing a subsequent support order. In addition to its own direct fiscal interest, the State has a public policy interest in ensuring proper financial support for minor children.
At the conclusion of the June 1, 1999, hearing, the court found the following facts based on the reliable and credible testimony of the defendant father. At the time the defendant father was having a sexual relationship with the plaintiff mother he did not know she was also seeing somebody named Alex.[4] She led the defendant to believe that his relationship with her was exclusive. Nonetheless, she failed to contact the defendant father for several days at the time of her child's birth.[5]
That is, he was relegated to obtaining birth information from her brother, after having been rebuffed by her mother in his attempts to make contact with the plaintiff. It was only when the defendant father went to court seeking visitation, some two years after the child was born, did the child's mother disclose, in sworn testimony, to the court and to the defendant father that she had enjoyed a simultaneous and more frequent sexual relationship with another man. As a direct result of this unexpected disclosure, the defendant father discontinued seeing the child.[6]
At the conclusion of the June 1, 1999, hearing, the court CT Page 15611 found that the allegations of fraud had been proven by clear and satisfactory evidence. The attorney for the child concurred with this finding.[7] Thus the court granted the defendant's motion to open and ordered the acknowledgment of paternity rescinded and vacated.
In a motion filed June 8, 1999, the State filed a motion to reargue. In that filing, the State acknowledged that the plaintiff mother was present in court when the hearing date was discussed and set, however, it was the State's opinion that, as a pro se party, that she may have become confused by both the passage of 10 weeks time and by the State's filing of a contempt action against the defendant father for hearing on June 2, 1999.[8] In granting the motion to reargue, however, the court found most persuasive the State's request that the plaintiff mother be given the opportunity to "explain" her sworn testimony in Judge Levine's court, given the "unfortunate conclusion" (of the court, on June 1, 1999) that these statements were evidence of fraud.[9]
The reargument of the motion to open was heard on September 23, 1999, and the defendant father appeared again pro se. Attorney Sean Crowshaw again appeared as counsel for the child. The mother and the State also appeared, to oppose the motion to open the judgment of paternity.
Our courts favor finality in judicial decisions. Meinket v.Levinson, 193 Conn. 110, 113, 414 A.2d 454 (1984); Vogel v.Vogel, 178 Conn. 358, 362, 422 A.2d 271 (1979); Perkins v.Perkins, 3 Conn. App. 322, 328, 487 A.2d 1117 (1985); Yade v.Nagy, 4 S.M.D. 237 (1990); State of Florida v. Backlund, 2 S.M.D. 61, 71 (1988). "Public policy requires that a term be put to litigation and the judgments, as solemn records upon which valuable rights rest should not lightly be disturbed or overthrown. . . ." Lampson Lumber Co. v. Hoer, 139 Conn. 294,297, 93 A.2d 143 (1952); Pullen v. Cox, 9 S.M.D. 134, 137 (1995)
Notwithstanding the inclination for finality, a judgment obtained by fraud may be attacked even after the time limitation for opening the judgment. Kenworthy v. Kenworthy, 180 Conn. 129,131, 429 A.2d 837 (1980); Gatling v. Gatling, Superior Court, judicial district of Waterbury, doc. No. 52272 (Aug. 9, 1990, Harrigan, J.); Cardona v. Negron, 13 S.M.D. ___ (1999).
The moving party bears a heavy burden of proof in attacking a CT Page 15612 judgment. "Fraud must be proven by `clear and satisfactory evidence', a standard more exacting than a fair preponderance of the evidence." Gatling, supra; see also Alaimo v. Royer,188 Conn. 36, 39, 448 A.2d 207 (1982). The standard is also phrased "clerk, precise and unequivocal evidence." Connell v. Colwell,214 Conn. 242, 571 A.2d 116 (1990); Alaimo, supra, 39; Lopinto v.Haines, 185 Conn. 527, 534, 441 A.2d 151 (1981); DeLuca v. C.W.Blakeslee Sons, Inc., 174 Conn. 535, 546, 391 A.2d 170 (1978);T.O. Richardson Co. v. Brockbank, Superior Court, judicial district of Hartford/New Britain at Hartford, doc. no. 703826 (March 23, 1995, Sheldon, J.); Pullen v. Cox, 9 S.M.D. 134, 138 (1995).
In order to establish fraud, the moving party must prove: "(1) that a false representation was made as a statement of fact; (2) that it was untrue and known to be untrue by the party making it; (3) that it was made to induce the other party to act on it; and (4) that the latter did so act on it to his injury." Millerv. Appleby, 183 Conn. 51, 54-55, 438 A.2d 811 (1981); Paiva v.Vanech Heights Construction Co., 159 Conn. 512, 515, 271 A.2d 69
(1970); Barnes v. Starr, 64 Conn. 136, 1250, 28 A. 980 (1894);Gaitling, supra; Pullen v. Cox, supra, 9 S.M.D. 138. Additionally, the judgment may be opened only if the moving party is not barred by any of the following restrictions: "(1) There must have bean no laches or unreasonable delay by the injured party after the fraud was discovered. (2) There must have been diligence in the original action, that is, diligence in trying to discover and expose he fraud. (3) There must be clear proof of the perjury or fraud. (4) There must be a substantial likelihood that the result of the new trial will be different. James, Civil Procedure (1965) § 11.7 pp. 540-42; 36 Ill.L.Rev. 894, 896-97 (1942). Furthermore, the granting of such relief must not unfairly jeopardize interest of reliance that have taken shape on the basis of the judgment. James Hazard, Civil Procedure (2d Ed.) § 13.14, p. 687." Varley v. Varley, 180 Conn. 1, 4,428 A.2d 317 (1980); Pullen v. Cox, supra, 138.
At the conclusion of the September 23, 1999, hearing, by clear and satisfactory evidence presented, the court finds the following facts based on the reliable and credible testimony. The plaintiff mother became pregnant with the child, Cody Tirade, in late August or early September 1994. At the time she became pregnant, she was living with her mother, and the defendant father was living with his aunt. The defendant father did not attend prenatal visits. The parties were never living together at CT Page 15613 any time in their relationship. During their relationship, the plaintiff mother visited the defendant father for a few hours in the afternoon, from time to time, before he went to work third shift. After leaving his aunt's house, the defendant father had no personal knowledge of the plaintiff mother's evening and nighttime whereabouts. They were not in contact while he was working third shift. The defendant father believed he was her exclusive sexual relationship. He was excluded from participation at the birth of the child, and, for a period of time thereafter not allowed to see the mother and child. Once the defendant learned of the birth and whereabouts of mother and child, he made efforts to visit the child regularly for about two years. When these visits were discouraged by the child's mother, he sought court ordered visitation. At the hearing on visitation the plaintiff mother raised, for the first time, her conviction that he was not the father of the child. Once the plaintiff mother stated in sworn testimony that he was likely not the father of the child; the defendant's relationship with the child broke down. Shortly thereafter he ceased visitation with the child and he has not seen the child for almost two and a half years. Cody is now age four and does not understand the defendant to be his father.
The plaintiff mother, through her own words, admitted that she committed a fraud on the defendant. That is, by demanding in Judge Levine's[10] court, that a paternity test be done for the reason that she named the defendant the father as a matter of convenience, she admitted that her earlier representations to him were false. By signing an acknowledgment in 1995, the defendant relied on the plaintiff's assertions as to their relationship and paid child support, to his detriment. The defendant has no ongoing parent-child relationship with the child.
The defendant is not guilty of laches. As soon as the defendant heard, in her testimony in court, the plaintiff's assertion that he may not be the father of the child the defendant immediately requested a "blood test." Later that same year, the defendant filed a motion to open which, through no fault of the defendant, the sheriff failed to serve correctly. Then, in early 1999, the defendant filed a second motion to open judgment, the hearing on which culminated in today's opinion.
Accordingly, the motion to open the judgment is granted. The acknowledgment of paternity is ordered rescinded and vacated. In accordance with General Statutes § 46b-171(b), the Department CT Page 15614 of Social Services is hereby ordered to refund to the defendant any and all money paid to the State pursuant to the prior judgment.
Bethany J. Alvord Family Support Magistrate